### GILLIAN et al. v. DAY.
### No. 11619.

Court of Civil Appeals of Texas. Galveston.
March 23, 1944.

Rehearing Denied April 20, 1944.

See, also, 181 S.W.2d 327.

Dick Young and P. Harvey, both of Houston, for appellants.

Albert J. DeLange, Frank A. Stamper, and Robert P. Beman, Jr., all of Houston, for appellee.

MONTEITH, Chief Justice.

This action in trespass to try title was instituted by appellants, Richard C. Gillian and his wife, Eva Gillian, for the recovery from appellee, W. C. Day, of the title and possession of Lots Nos. 28 and 29, Block 209, in Houston Heights Addition to the City of Houston.

Appellee answered by a general denial, a plea of not guilty, various pleas of limitation, improvements in good faith, and taxes paid. By cross-action in trespass to try title he sought recovery of the title and possession of the lots in controversy.

Appellants answered appellee's cross-action by pleas of general denial and not guilty and by plea that they held the lots in controversy under a contract of purchase from O. M. Carter, the common source of title. They specially pled the ten-year statute of limitations and by trial amendment tendered the balance due, if any, on the purchase price of said property.

At the conclusion of all the evidence the court granted appellee's motion for an instructed verdict and rendered judgment that appellants take nothing by their suit and that appellee recover the title and possession of the lots in controversy on his cross-action.

By contract dated February 17, 1919, Richard C. Gillian and his wife entered into a contract with O. M. Carter to purchase the lots in controversy for the agreed price of $460, of which sum $5 was paid in cash and the balance, with 8% interest, was to be paid in 120 monthly installments of $5.50 each, one installment being due and payable each month thereafter until the purchase price, with interest, was fully paid. The contract provided that Gillian should take immediate possession of the property and that the vendor would convey said lots to him by general warranty deed when the purchase price was fully paid. It provided that the vendor should pay all taxes thereafter levied against the property and that past-due installments of the purchase price and taxes paid by the vendor should bear interest at the rate of 10% per annum.

The contract provided that: "The party of the second part further agrees that if

default is made in the payment of any two installments of said purchase money, or if the party of the second part (Gillian), his heirs or assigns, violate any of the covenants herein contained, the party of the first part may cancel his contract at any time without notice to the party of the second part, and retain the amount previously paid by the said party of the second part as stipulated and liquidated damages, as rents for use and occupancy of said premises, and the possession of said premises shall immediately be peaceably surrendered to said party of the first part by the party of the second part on demands therefor by said party of the first part. In case default should be made in the payment of any two installments of purchase money as hereinabove provided, or any of the covenants hereinabove contained are violated, the party of the first part shall not be required to immediately cancel his contract, and his failure to act promptly in that respect shall not be considered a waiver of his right to do so at any subsequent time while the party of the second part is in default, or a violation of any of the covenants herein provided continues."

Appellant, Richard C. Gillian, took possession of the purchased lots immediately after the execution of said contract, built a small house, and made other improvements thereon, and occupied the property as a home until about 1935 when he rented it to one Albert Turner, who occupied and paid rental thereon to Gillian until April, 1942.

Appellant Gillian introduced in evidence on the trial of the case numerous receipts showing payments on the purchase price of said property up to November, 1941. Appellee introduced in evidence the ledger sheets from the O. M. Carter office which were identified by the accountant and office manager under whom they were made. These ledger sheets showed all payments on said lots for which Gillian held receipts and the dates in which the payment were made. They showed a balance due by Gillian on the purchase price of said lots of $49.81, principal, $6.55 interest, and $208.64 in taxes that had been paid by O. M. Carter and his agents on said property for which they had not been reimbursed. This amount was exclusive of interest on the amount of taxes paid.

By amended pleadings appellants alleged that they had made full payment of the purchase price for said lots under the terms of their purchase-money contract. They did not plead, however, any lost receipts or any additional amounts other than the amounts for which they held receipts. On the trial they offered evidence to prove payments of indefinite amounts to unidentified parties who were not shown to have had authority to collect the payments alleged to have been made. The court, we think, properly excluded this evidence. The record shows that numerous letters were written to Gillian by the O. M. Carter office demanding that he pay the balance due on the purchase price of said lots and that in a letter written September 5, 1941, he was told that no other payments would be accepted unless the full balance due on the purchase price for said lots was made. Thereafter Gillian offered to make several payments but no payment was tendered of the full amount shown by the record to have been due, prior to the filing of this suit.

By deed dated April 6, 1942, Carroll M. Carter, who held the record title to the lots in controversy under O. M. Carter, conveyed said lots to V. L. Evans, who, by deed of the same date, conveyed the lots to Tommy Yett. By deed dated April 28, 1942, Yett conveyed the lots by general warranty deed to appellee for a recited consideration of $10 and the assumption of a note for the sum of $1,000. Contemporaneously with the execution of said deed, appellee executed a deed of trust securing Tommy Yett in the payment of an additional sum of $109.42.

This suit was filed by appellants on May 4, 1942.

It is the settled law in this state that the purchaser of property under an executory contract of sale can only perfect his title to the land purchased by paying the purchase price in accordance with the terms of his agreement and that, upon his failure to do so, the vendor has the right to rescind the sale and convey the property to another. Where it is shown that the purchase price under said contract had not been paid and the vendor therein has exercised his right of rescission by conveying the land to other parties, this rescission is held to be binding upon the original vendee to the extent that he cannot successfully maintain an action in trespass to try title against those claiming under the original vendor. Barker v. Temple Lumber Co., 120 Tex. 244, 37 S.W.2d 721; Hill v. Preston, 119 Tex. 522, 34 S.W.2d 780;

Boddeker v. Olschewske, 127 Tex. 598, 94 S.W.2d 730; Church v. Cocke, 120 Tex. 262, 37 S.W.2d 723; Benn v. Security Realty & Development Co., Tex.Civ.App., 54 S.W.2d 146; Hardy v. Wright, Tex. Civ.App., 168 S.W. 462; Bailey v. Burkitt, Tex.Civ.App., 201 S.W. 725; Bunn v. City of Laredo, Tex.Com.App., 245 S.W. 426.

Appellants contend, however, that the above-stated rule is not applicable in the instant case for the alleged reason that appellants' tenant, Albert Turner, was in possession of the lots in controversy at the time of the execution of the deed relied upon by appellee as a rescission of said contract, and that appellee is therefore estopped to deny their title and right of possession to said property.

This contention cannot, we think, be sustained, since the fact that property under contract of sale is in the possession of a tenant of the purchaser does not deprive one who has contracted to sell the property of the right to assert title remaining in him in the event the purchaser thereof has not complied with the terms of the purchase contract. Texas Land Co. v. Turman, 53 Tex. 619; Andrews v. Richardson, 21 Tex. 287, 297; Gallagher v. Bennett's Heirs, 38 Tex. 291, 295; Hartzog v. Seeger Coal Co., Tex.Civ.App., 163 S.W. 1055.

Appellant further contends that appellee herein was without power to rescind said contract of sale, for the reason that more than four years had elapsed after the maturity of the last installment of the purchase price due thereon before the rescission relied upon by appellee.

While we do not think that the rule contended for by appellants is applicable to the facts in the instant case, this contention must be overruled for the additional reason that the record shows that appellants did not plead the four-year statute of limitation, Article 5520, Vernon's Ann.Civ.Statutes.

Appellants contend that appellee cannot avail himself of the defense of innocent purchaser for a valuable consideration in the instant case, for the alleged reason that the record shows that they, the appellants, were in possession of the lots in controversy both in person and by tenant on the date of appellee's purchase thereof, and that appellee is therefore charged with notice of their ownership and rights in the property.

While it is undisputed that Albert Turner was originally in possession of said property as Gillian's tenant, the record shows that Turner was paying rental to the agent of Tommy Yett, appellee's vendor, at the time of appellee's purchase thereof. The record also shows that, while appellant testified that he had maintained a vegetable garden on the rear portion of said lots continuously since he had occupied said property as a home, there is no evidence that the appellee had knowledge, either actual or constructive, of that fact.

Further, the record shows that appellee paid a valuable consideration for said property and that he held title under a general warranty deed from the holder of the legal title thereto.

It is the established law in Texas that the claimant to the equitable title to land as against the subsequent owner of the legal title thereof assumes the burden of showing that the latter is not an innocent purchaser. Old Nat. Life Ins. Co. v. Guest, Tex.Civ.App., 163 S.W.2d 241; Teagarden v. R. B. Godley Lumber Co., 105 Tex. 616, 154 S.W. 973; Yeager v. Woodson, Tex. Civ.App., 3 S.W.2d 822; Ratcliffe v. Mahres, Tex.Civ.App., 122 S.W.2d 718, 719, writ refused; Scott & Carmody v. Canon, Tex.Com.App., 240 S.W. 304.

Applying the above authorities to the facts in the instant case, we think that the jury could have rendered judgment in favor of appellants for the title and possession of the lots in controversy only by disregarding the undisputed evidence in the record.

The courts of this state have uniformly held that, where the evidence on the essential facts in a case is such that reasonable minds cannot differ as to its verity and inference, a question of law is then presented and it is the duty of the trial court to instruct a verdict and enter judgment upon such undisputed facts, as was done in the instant case. May v. Donalson, Tex.Civ.App., 141 S.W.2d 702; Lewis et al. v. Clark, Tex.Civ.App., 149 S.W.2d 244; Kirby Lumber Co. v. Temple Lumber Co., 125 Tex. 284, 83 S.W.2d 638; 41 Tex. Jur. 939, Section 169.

It follows that the judgment of the trial court must be in all things affirmed.

Affirmed.