**CONTINENTAL ROYALTY CO. v.
MARSHALL et al.**

No. 6533.

Court of Civil Appeals of Texas.
Texarkana.

April 26, 1951.

Rehearing Denied May 24, 1951.

Storey, Sanders, Sherrill & Armstrong, Dallas, for appellant.

Ramey & Ramey, Sulphur Springs, Woodrow H. Edwards, Mt. Vernon, for appellees.

LINCOLN, Justice.

This is a suit in trespass to try title to land in Hopkins County, including a plea of limitation of ten years, brought by appellees against appellant, a corporation. Appellant answered by general denial, plea of not guilty, various statutes of limitation, laches and stale demand. For affirmative pleading in support of its claim of title to an undivided one-half of the minerals in the land appellant pleaded the contract hereafter set out, that it had fully complied with all obligations required under it, and that by reason thereof title to said minerals had vested in appellant, which title is paramount to and to the exclusion of any right, title, interest or claim of appellees. The appellees filed supplemental petition which it is not necessary to set out. Trial was to the court and judgment rendered in favor of the appellees for title and possession of the land and for cancellation of the instrument under which appellant claimed to have acquired its title to the minerals.

T. I. Moseley and wife were admittedly the common source of title. Appellees claim under an unbroken chain of conveyances out of Moseley and wife. The conveyances introduced are sufficient to prove their legal title unless it is defeated by the instrument cancelled by the judgment of the court. The decision on this appeal involves the correctness of that action. The instrument referred to was executed by Moseley and his wife on March 31, 1921, and was filed and recorded in Hopkins County April 8, 1921. It is headed "Contract," and reads as follows:

"The State of Texas }
County of Wood. }
"Know all men by these presents:

"That we, T. O. Moseley and Mrs. L. E. Moseley his wife, of Alba, Texas, Wood County, Texas, for and in consideration of $8.33-1/3 per acre, to be paid by the Continental Royalty Company, as hereinafter fully set out, do hereby bargain, sell and convey unto the Continental Royalty Company, a corporation, an undivided 1/2 interest in and to all mineral rights, in and under the following described tract of land, subject to a certain lease hereinafter mentioned:

"Lying and being situated in the county of Hopkins, State of Texas, being out of the Nacogdoches University survey, and more fully described as follows, to-wit:

"50 acres of the Nacogdoches University Survey of land situated in Hopkins County, Texas. Being the land conveyed me by W. R. Bradley as shown by the deed records of Hopkins Co. Texas to which reference may be had for full description of said land.

"And we also hereby bargain, sell and convey unto The Continental Royalty Co. an undivided 1/2 interest in and to all royalties to which we may be entitled under that certain lease heretofore made by any one upon the said land above described to

any-one leasee, and dated the ——— day of ———, and of record in vol. ——— page ——— deed record of ——— county ——— together with an undivided ——— of all rights thereunder.

"It is hereby mutually agreed between the parties hereto that the price above shown, to be paid for the above described mineral rights and royalties shall be paid in the stock of The Continental Royalty Company, at its par value; and further, that of the stock so paid, 40% of same will be assigned by first parties to American Royalty Company in consideration of its services rendered and to be rendered, and the payment by the American Royalty Company of all expenses of every kind of The Continental Royalty Company.

"It is further agreed that the above sale of mineral rights is conditioned on a good and merchantable title to said property; abstract of which brought down to date shall be furnished by First Parties; and further, this contract shall not become binding on Second Party until approved by its Board of Directors, and accepted by the Board of Appraisers of the Continental Royalty Company, which approval and acceptance must be made not later than ten days after receipt of abstract of title as above mentioned, or this contract becomes null and void.

"It is agreed that notice of such approval or acceptance shall be given to said First Party either by registered mail or in person.

"The First Party hereby agrees to pay off and discharge any and all encumbrance now or hereafter existing on said property above described promptly upon maturity, including taxes and assessments of all kinds, and should First Party fail or refuse to do so, it is agreed that the said The Continental Royalty Company may do so, and shall thereupon become fully subrogated to all rights of owners or holders of any such encumbrance, taxes or assessments.

"It is understood that this contract is executed in duplicate, either or both of which shall be deemed and held to be original for all purposes.

"Witness our hands the 31st day of March, 1921.

(S)   T. I. Moseley
L. E. Moseley."

The instrument bears the acknowledgment of Moseley and wife in due form, taken before T. M. Reneau, a notary public. Admittedly it was executed by them. It was not their homestead. Testimony on the part of appellant was to the effect that its stock book contains a stub bearing date April 6, 1921, with memorandum thereon that stock certificate No. 319 for 250 shares of stock in appellant company issued in favor of T. I. Moseley. The original stock certificate was not produced and was not accounted for in the trial. It was also shown from the certificate stub in the stock book that on the same date stock certificate No. 320 was issued to T. I. Moseley for 167 shares of the capital stock of appellant. The original stock certificate bearing that number and for the shares stated was produced and introduced in evidence. On the back it bore a transfer of said stock to American Royalty Company bearing date April 6, 1921, purporting to have been signed by Moseley and witnessed by T. M. Reneau. Moseley was produced as a witness for the appellees and denied having received either of the foregoing stock certificates and denied his signature on the transfer of certificate No. 320. His testimony was supported by that of two additional witnesses on handwriting.

Appellant also introduced in evidence three dividend checks issued by appellant in favor of Moseley for $1.25 each, bearing dates April 12, 1922, October 9, 1922, and March 25, 1924. Each of the checks bears an endorsement purporting to be the signature of Moseley. Moseley admitted receiving the checks of April 12, 1922, and March 25, 1924, and admitted his signature as endorser; but he denied having received the check of October 9, 1922, and testified that he did not sign the endorsement. His testimony of that latter fact was supported by two witnesses as to handwriting. All these instruments were exhibited to the court and photostatic copies were used, as well as the originals, except that the original or

photostat of certificate No. 319 was not produced.

Further evidence of appellant was its minute book carrying an entry under date September 30, 1921, that the contract was accepted by appellant's board of directors "on recommendation of the board of appraisers." No further evidence was produced by appellant, either parol or documentary, that certificate No. 319 was actually issued, or that it was delivered to Moseley; nor was there any evidence that an abstract of title was furnished to or requested by appellant, nor that appellant's board of appraisers approved the title or the contract (except as appears in the minute book as above stated), nor that Moseley or his wife were ever notified either in person or by registered mail that said contract had been approved and accepted by appellant. T. M. Reneau was shown to have been employed by appellant to secure, and that he did secure, the execution of the contract by the Moseleys. According to routine, he would return the contract to appellant, the stock certificates when issued would be delivered to him and by him delivered to Moseley; the latter would endorse the transfer of certificate No. 320, and it would be returned to appellant's office. No testimony was produced, however, to show that these matters were in fact so handled. Reneau was deceased and, of course, did not testify. The transfer of certificate No. 320 shows his name as a witness to the purported signature of Moseley, although there was no evidence of his signature or that he did so.

Moseley testified that he never furnished an abstract to the appellant, was never called upon for one, that he was never notified of acceptance of the contract by appellant, that he and his wife never executed any deed, and that he never discussed any of the matters with Reneau or any other representative of appellant after the contract aforesaid was executed. He never saw Reneau again after the contract was signed.

Appellee's title originated in a deed of trust from Moseley and wife to Andrew Kincaid, trustee, for the benefit of Oklahoma Farm Mortgage Company dated August 8, 1921, and which was filed for record and recorded in the deed of trust records on September 20, 1921. This deed of trust was to secure a loan of $600.00 from the mortgage company to Moseley, which the evidence shows Moseley received in money. There was subsequently, on May 3, 1927, a trustee's sale by substitute trustee under foreclosure of the foregoing deed of trust, and by regular conveyances from and under the substitute trustee the title descended to the appellees.

Appellant presents five points of error, but the principal question to be determined arises under the instrument above copied. It is insisted that the instrument was a complete conveyance to appellant of one-half of the minerals in the lands described in the petition, thereby effecting a severance of the minerals from the surface, prior to the acquisition of the title by predecessors in title of appellees. Our conclusion is that it was not a conveyance of the minerals in praesenti, but was an executory contract of sale of said minerals.

██ It is true that the instrument contains words appropriate to a present conveyance. The use of the words "sold and conveyed" are presumptively words of conveyance, as insisted by appellant. But it also contains expressions not only inappropriate to a conveyance but entirely contrary to such purport. The instrument, of course, must be construed as a whole. In Snow v. Prince, 13 S.W.2d 342, 344, the Commission of Appeals of the Supreme Court said: "It is universally established, however, that even though an instrument use such words, if, considering same as a whole, it reasonably appears that the parties contemplate a subsequent deed of conveyance, the contract will be construed as executory and not as a deed."

█ In that case Judge Leddy quoted with approval from Williams v. Paine, 169 U.S. 55, 18 S.Ct. 279, 42 L.Ed. 658, as follows: "We agree generally that although there are words of conveyance in praesenti in a contract for the purchase and sale of lands, still, if from the whole instrument it is manifest that further conveyances were contemplated by the parties, it will be con-

sidered an agreement to convey and not a conveyance. The whole question is one of intention to be gathered from the instrument itself."

The identical contract here involved was so construed by the U. S. Circuit Court of Appeals, Fifth Circuit, in Jones v. Continental Royalty Co., 115 F.2d 731, 732. Two tracts of land were in controversy, one was a homestead and the other was not. The court said: "Thus on its face the instrument with its provisions for acceptance of title and other like clauses, shows clearly enough that it was not, and was not intended to be, a deed but a contract which should eventuate in one. As to the homestead tract, the instrument being but a contract to convey was therefore one which was from the beginning not enforceable (citing cases).

"As to the second tract the instrument was on its face inoperative as a conveyance and under the allegations of the complaint that the things to be done in order to make it effective as such were never done, it is quite plain that it never became so operative."

Being an executory contract of sale, the burden of proof was upon appellant to show that within a reasonable time it had complied with all the terms and conditions thereof. By so doing appellant would then be in possession of an equitable title subject to enforcement by specific performance. Absent such showing the appellees were entitled to judgment. In Gilliam v. Day, Tex.Civ.App., 179 S.W.2d 575, 577, error refused, it is said:

"It is the settled law in this state that the purchaser of property under an executory contract of sale can only perfect his title to the land purchased by paying the purchase price in accordance with the terms of his agreement and that, upon his failure to do so, the vendor has the right to rescind the sale and convey the property to another. Where it is shown that the purchase price under said contract had not been paid and the vendor therein has exercised his right of rescission by conveying the land to other parties, this rescission is held to be binding upon the original vendee to the extent that he cannot successfully maintain an action in trespass to try title against those claiming under the original vendor." See also Allen v. Strode, Tex.Civ.App., 62 S.W. 2d 289; Bell v. Rudd, 144 Tex. 491, 191 S. W.2d 841; Puckett v. Hoover, 146 Tex. 1, 202 S.W.2d 209.

Upon appeal of an action tried before the court, every reasonable intendment must be resolved in favor of the correctness of the judgment, where there is evidence in support. The judgment for appellees involved findings that the conditions required for a performance of the contract by appellant were not performed by it, that Moseley and wife, because of such non-performance, rescinded the contract and executed the note and mortgage in favor of Oklahoma Farm Mortgage Company through which appellees' title descended. Gilliam v. Day, Tex.Civ.App., 179 S.W.2d 575, supra. The evidence supports such findings and we think the court correctly so held, and that appellant acquired neither a legal nor equitable title to the minerals so as to effect a severance, a necessary element to support appellant's limitation pleas.

Appellant insists that the court erred in cancelling the contract since Moseley was not a party to the suit. The plaintiffs under supplemental petition alleged that the contract was a continuing cloud upon their title which should be removed by cancellation thereof. Since appellees were the owners of the fee simple title, there having been no severance of the minerals, and were in possession of the land, there was no error in the action of the court in removing such cloud from their title and cancelling the instrument. Pannell v. Askew, Tex.Civ.App., 143 S.W. 364; Watson v. Rochmill, 137 Tex. 565, 155 S.W.2d 783, 137 A.L.R. 1032; Luker v. Anderson, Tex.Civ.App., 10 S.W.2d 149; Texas Co. v. Davis, 113 Tex. 321, 254 S.W. 304; 34 Tex.Jur., p. 829.

Appellant asserts error of the court in allowing witnesses Prim and Marshall to express opinions as to the handwriting of Moseley on the ground that

the evidence showed they were not handwriting experts. Both of them had been and were bank employees having wide experience in examination of handwritings. It is true that Prim said he was no expert, but whether or not he was sufficient expert to give testimony was a matter for determination of the court rather than the conclusion of the witness. Furthermore, the court had the instruments before him and could make his own examinations of the handwritings. We think there was no error in permitting the witnesses to testify. The objections went to the weight of the testimony rather than to its admissibility.

We have considered all of appellant's points of error, the authorities cited, and the discussions in appellant's excellent brief. But finding no error in the record, said points are respectfully overruled, and the judgment of the district court is affirmed.

Judgment affirmed.