# NO. 12-15-00170-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *LINDA ANN PARRISH RICHARDSON AND GARY BRUCE RICHARDSON, CO-TRUSTEES OF THE M.C. PARRISH, JR. TESTAMENTARY TRUST; JUDY CLEVELAND HUPPERT; JAMES COOKE WILSON, INDIVIDUALLY, AS CO-INDEPENDENT EXECUTOR OF THE ESTATE OF BETTY VIRGINIA KILEY WILSON, DECEASED, AND AS TRUSTEE OF ALL TRUSTS CREATED UNDER THE WILL OF BETTY VIRGINIA KILEY WILSON; MARGARET WILSON RECKLING, INDIVIDUALLY, AS CO-INDEPENDENT EXECUTRIX OF THE ESTATE OF BETTY VIRGINIA KILEY WILSON, DECEASED, AND AS TRUSTEE OF ALL TRUSTS CREATED UNDER THE WILL OF BETTY VIRGINIA KILEY WILSON; RANSOM CLARK LUMMIS; JANIE GRANGER SPICER; THOMAS S. DAVISON; FREDERICK R. LUMMIS II; PALMER BRADLEY LUMMIS; LINDA ANN PARRISH RICHARDSON AND GRAY BRUCE RICHARDSON, AS CO-TRUSTEES OF THE M.C. PARRISH, JR. TESTAMENTARY TRUST; ROBERT L. BRADLEY, JR.; WILLIAM R. LUMMIS, JR.; CLYTIE HARRIS THOMAS PHELPS; MARY GAIL THOMAS CAMPBELL; JOHN K. HARDY; AND JOHN TURNER NEVITT, APPELLANTS V.* | § § § | *APPEAL FROM THE 145TH* *JUDICIAL DISTRICT COURT* *NACOGDOCHES COUNTY, TEXAS* |
| *DONALD ROGER MILLS, RHONDA MILLS, AND BEVERLY MILLS POOL, APPELLEES* | | |

*OPINION ON REHEARING*

Donald Roger Mills, Rhonda Mills, and Beverly Mills Pool (Appellees) filed a motion for rehearing. We grant the portion of the motion relating to our prior disposition that divested Appellees of an undivided 4.1666% interest in the mineral estate that is the subject of this suit. We overrule the remainder of Appellees' motion. We withdraw our October 5, 2016 opinion and judgment and substitute the following opinion and a corresponding judgment in their place.

This suit involved the construction of a 1906 instrument pertaining to the minerals under certain property and a 1908 release. The trial court determined that Appellees owned an undivided one-half interest in the oil, gas, and other minerals described in the 1906 instrument and that the heirs, devisees, and assigns of Robert Lindsay and June C. Harris[1] (Appellants) take nothing. Appellants raise four issues on appeal. We reverse and render.

## BACKGROUND

For years, Appellees had received royalty payments for one-half of the oil, gas, and other minerals of the subject property. When those royalty payments abruptly stopped in October 2010, Appellees filed suit against Appellants, seeking to have the payments resumed.[2] Appellees' dispute with Appellants revolves around the construction of two instruments. First, they contend that the following instrument recorded in Volume 64, Page 64 of the Deed Records of Nacogdoches County, Texas, and recorded on July 23, 1906, is an oil and gas lease and not a mineral deed.

S A Mills et al                                      Volume 64 Page 64
to                                                   Deed Records of Nacogdoches County
Robert Lindsey et al

The State of Texas

County of Nacogdoches

Know all men by these presents: That we, S.A. Mills, Sophronia Mills, wife of S.A. Mills, R.E. Mills, Mary Ann Mills, wife of R.E. Mills, Thos Mills and wife Z.A. Mills parties of the first part are the owners of the several tracts of land hereinafter described, and there exists upon said land evidences in

---

[1] The heirs, devisees, and/or assigns of Robert Lindsay and June C. Harris are Judy Cleveland Huppert; James Cooke Wilson, Individually, as Co-Independent Executor of the Estate of Betty Virginia Kiley Wilson, Deceased, and as Trustee of all Trusts Created under the Will of Betty Virginia Kiley Wilson; Margaret Wilson Reckling, Individually, as Co-Independent Executrix of the Estate of Betty Virginia Kiley Wilson, Deceased, and as Trustee of all Trusts Created under the Will of Betty Virginia Kiley Wilson; Ransom Clark Lummis; Janie Granger Spicer; Thomas S. Davison; Frederick R. Lummis II; Palmer Bradley Lummis; Linda Ann Parrish Richardson and Gray Bruce Richardson, as Co-Trustees of the M.C. Parrish, Jr. Testamentary Trust; Robert L. Bradley, Jr.; William R. Lummis, Jr.; Clytie Harris Thomas Phelps; Mary Gail Thomas Campbell; John K. Hardy; and John Turner Nevitt.

[2] Appellees contend only that they own one-half of the minerals of the subject property. They recognize that their predecessors-in-interest conveyed the remaining one-half mineral interest in 1962.

the way of surface indications which have moved said parties of the first part to believe that oil, [g]as[,] and mineral[s] of other kinds exist in quantities of greater or lesser proportions underneath the surface, and whereas said parties <u>desire</u> to have the title to their lands examined, abstracted, and perfected if any defects exist, and desire to have certain indebtedness existing against the premises in the shape of notes for the purchase money for said land paid off and concentrated into the hands of the parties of the second part, and desire to have investigations, tests[,] and demonstrations made in order to ascertain whether or not oil, gas[,] and other minerals <u>aboun[d]</u> in, under[,] and upon said land, and to have the property managed and controlled so as to bring results beneficial to them either by development and operation of said property for oil, gas or other mineral[s], or by selling said property if deemed best in their [j]udgment at such enhanced value as may result from the test, demonstration[,] and investigations to be made by said parties of the second part, and whereas said parties of the second part have agreed to perform the work of testing, demonstrating[, and] investigating the oil upon said premises, and to generally handle the property for the best interest of all parties concerned by doing and performing such necessary things in the premises as will enhance the value of said property, - making it more salable, valuable and desirable by such usual proper and practical means as in the [j]udgment of the parties may seem best, and have agreed to abstract the title to said property to thoroughly examine and investigate said titles, and to do such things as are proper and necessary to perfect said titles, and have agreed to perform such other and further things as may seem necessary and proper to carry out the purposes and intent of this agreement.

Therefore in consideration of the premises, the services rendered and to be rendered by said parties of the second part, as hereinbefore specified and set forth, we, the said S.A. Mills, Saphronia [sic] Mills, R.E. Mills, Mary Ann Mills, Thos Mills and Z.A. Mills have bargained, sold and conveyed, and by these presents do grant, bargain, sell and convey unto Robert Lindsey and June C. Harris, the parties of the second part, an undivided one half interest in the oil, gas, and other minerals which do or may exist, in, under and upon the several tracts of land hereinafter described, with the rights of ingress and egress, and such other and further rights and privileges as are necessary and proper for the performance of the work of prospecting, testing, demonstrating, developing and operating for oil, gas or other minerals, the land and premises are described as follows:

[property description omitted]

To have and to hold the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said Robt. Lindsey and June c. Harris, their heirs and assigns forever, and we do hereby bind ourselves, our heirs, executors and <u>administrators</u> to warrant and forever defend all and singular the said [p]remises unto the said Robt Lindsey and June C. Harris, their heirs and assigns against every person whomsoever lawfully claiming or to claim the [s]ame or any part thereof.
Witness our hands at Nacogdoches, this the 9 day of July A.D. 1906.

|  |  |
|---|---|
| June C. Harris | S.A. Mills |
| Robt. Lindsey | R.E.Mills |
|  | M.A. Mills |
|  | Sophronia Mills |
|  | T.B. Mills |
|  | Z.A. Mills |

[acknowledgements omitted]

Filed for record July 23, 1906 at 12 o'clock  m

P.M. Sanders County Clerk

Appellees, as part of their suit, also contend that the following release dated January 18, 1908, and recorded on April 5, 1927, in Volume 15, page 92 of the Oil and Gas Lease Records of Nacogdoches County, Texas, released the 1906 instrument.[3]

RELEASE LEASE
JUNE C. HARRIS ET AL

    TO

R. E. MILLS ET AL

THE STATE OF TEXAS        §

COUNTY OF NACOGDOCHES   §

WHEREAS on the 9th day of July A. D. 1907, R. E. Mills, Tom Hills and Sam Mills executed and delivered to the Nacogdoches Land Company, a firm composed of Robt Lindsey and June C. Harris, a certain contract or lease covering land described in said contract or lease, a part of the John Cooper, T. J. Cooper and the M. J. Mills surveys in Nacogdoches County, Texas, providing for the development and exploitation of said property for oil and other mineral, and

WHEREAS by the terms of said contract or lease the time for said development has expired rendering null and void said lease.

THEREFORE this is to acknowledge a full and complete release and relinquishment of my right or claim held or claimed by said Nacogdoches Land Co., Robt. Lindsey or June C. Harris by virtue of said contract, lease or agreement, and the same is hereby declared to be extinguished and of no further force or effect.

WITNESS our hands at Nacogdoches, Texas, this the 18th day of January A D 1908.
JUNE C. HARRIS
ROBT. LINDSEY

[acknowledgements omitted]

Filed, April 5, 1927, at 11 o'clock A. M.
Recorded, April 5, 1927, at 4 o'clock P. M.

W. R. Bailey, Clerk, County Court,
Nacogdoches County, Texas.

After a bench trial, the trial court issued findings of fact and conclusions of law in which it found that the 1908 release was intended to, and did in fact, release the 1906 instrument. It concluded that the two instruments were ambiguous when construed together, and that extrinsic evidence was admissible to determine the parties' true intent. The trial court alternatively found that the 1906 instrument was released when Lindsey and Harris did not perform their obligations as described in the 1906 instrument within a reasonable time. The trial court concluded further that the 1906 instrument was a contract containing executory promises by Harris and Lindsay, the

---

[3] The release is recorded in Volume 137, Page 576, of the Deed Records of Nacogdoches County, Texas, on July 14, 1934.

instrument did not have an express term for time of performance, the law would supply a term that their promises were to be performed within a reasonable time, and that a reasonable time for performance had passed. The trial court also found that Appellants failed to meet their burden of proof on their affirmative defenses. Therefore, the trial court determined that the one-half mineral interest had reverted to the Millses, who were Appellees' predecessors. Accordingly, the trial court signed a judgment that Appellees take one-half of the oil, gas, and other minerals under the subject property and that Appellants take nothing. Appellants filed a motion for new trial, which was overruled by operation of law, and this appeal followed.

### CONSTRUCTION OF THE 1906 AND 1908 INSTRUMENTS

In their first issue, Appellants argue that the trial court erred in its determination of the legal construction and effect to be given to the 1906 instrument and the 1908 release.

**Standard of Review**

Whether a written instrument is ambiguous is a question of law for the court. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003); *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983). Therefore, we review the trial court's decision de novo. *See Kachina Pipeline Co. v. Lillis*, 471 S.W.3d 445, 449 (Tex. 2015). When conducting a de novo review, we exercise our own judgment and redetermine each issue while according no deference to the trial court's decision. *Hausser v. Cuellar*, 345 S.W.3d 462, 467 (Tex. App.—San Antonio 2011, pet. denied). If, after we apply the relevant rules of construction, the written instrument can be given a definite legal meaning or interpretation, it is not ambiguous. *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (per curiam), *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc*. 596 S.W.2d 517, 519 (Tex. 1980). We review an unambiguous instrument without considering parol evidence. *See Stewman Ranch, Inc. v. Double M. Ranch, Ltd*., 192 S.W.3d 808, 810 (Tex. App.—Eastland 2006, pet. denied).

**Applicable Law**

Our primary duty when construing an unambiguous deed is to ascertain the intent of the parties from all of the language in the deed by applying a fundamental rule of construction known as the "four corners" rule. *See Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991). We discern the parties' intent from the entirety of the deed's language without reference to matters of mere form, relative position of descriptions, technicalities, or arbitrary rules. *See Stribling v. Milligan DPC Partners, L.P*., 458 S.W.3d 17, 20 (Tex. 2015). No single provision taken alone will be given

controlling effect. ***SAS Inst., Inc. v. Breitenfeld***, 167 S.W.3d 840, 841 (Tex. 2005) (per curiam). We consider the entire writing and attempt to harmonize and give effect to all of its provisions by analyzing those provisions with reference to the document as a whole. *See **Frost Nat'l Bank***, 165 S.W.3d at 312. We must assume the parties to the instrument intended every clause to have some effect; therefore, the language of the deed should be interpreted so that no clause is rendered meaningless. ***Union Pac. R.R. Co. v. Ameriton Prop., Inc***., 448 S.W.3d 671, 678 (Tex. App.– Houston [1st Dist.] 2014, pet. denied).

## Characterization of the 1906 Instrument

During the bench trial, Appellees contended that the 1906 instrument is ambiguous and that the trial court should consider parol evidence in determining its meaning. Appellants argued that the 1906 instrument is unambiguous and that the trial court should construe it under the "four corners" rule. *See **Luckel***, 819 S.W.2d at 461. We will therefore conduct a de novo review to determine whether the 1906 instrument is ambiguous. *See **Hausser***, 345 S.W.3d at 467.

In the first paragraph of the instrument, the Millses state why they are entering into an agreement with Robert Lindsey and June C. Harris. They explain that, based upon "surface indications," they believe oil, gas, and other minerals exist underneath the surface of their land. Because of that belief, they specify certain actions they want Harris and Lindsey to take. First, they want them to examine and abstract their title to the property and cure any defects. Second, they want Harris and Lindsey to pay off any purchase money indebtedness existing against the property. Third, they "desire" to have "investigations, tests[,] and demonstrations made" to determine whether oil, gas, and other minerals are under the subject property. Fourth, they want Harris and Lindsey to manage and control the property in such a way that it will be developed for oil, gas, and other minerals, or alternatively to sell it if it has an enhanced value as a result of their "tests, demonstrations[,] and investigations."

The paragraph provides further that Harris and Lindsey will perform the following services: (1) testing, demonstrating, and investigating the possibility of oil on the premises, (2) doing whatever is necessary to make the land more valuable, (3) examine title to the land and do whatever is necessary to perfect said title, and (4) do other things needed to carry out the purpose and intent of the parties' agreement.

It is significant in reviewing the recitals in the instrument that Harris and Lindsay may have a right to develop the oil, gas and other minerals under the land, but no duty to do so. It is also

important that neither the Millses nor Harris and Lindsey specify a time period within which the enumerated actions must be taken.

The second paragraph begins with a statement that the consideration for the agreement is the services rendered and to be rendered by Harris and Lindsey. The second sentence of the paragraph is the granting clause of the instrument. The purpose of the granting clause is to define and designate the estate conveyed. *Gibson v. Watson*, 315 S.W.2d 48, 54 (Tex. Civ. App.—Texarkana 1958, writ ref'd n.r.e.). The granting clause in the 1906 instrument specifies that the Millses "grant, bargain, sell and convey . . . an undivided one-half interest in the oil, gas and other minerals" to Harris and Lindsey.

The third paragraph of the instrument, which follows the legal description, begins with an habendum clause. The habendum clause in Texas deeds delineates the extent of the interests being granted and any conditions affecting the grant. *Anadarko Petrol. Corp. v. BNW Prop., Co*., 393 S.W.3d 846, 851 n.6 (Tex. App.—El Paso 2012, pet. denied). We believe it is significant that the habendum clause here includes the word "forever." That means there is no limitation or condition upon the one-half mineral interest being conveyed to Harris and Lindsey.

A warranty clause follows the habendum clause in the third paragraph of the instrument. The purpose of the warranty clause is to warrant that neither the same estate nor any right, title, or interest therein has been conveyed to any person other than the grantee and that the property is free from encumbrances. *Stewman Ranch, Inc*., 192 S.W.3d at 811. As with the habendum clause, it is significant that the word "forever" is used in the warranty clause. That means the Millses did not limit their warranty of the one-half mineral interest being conveyed.

Appellees contend that the 1906 instrument was only a contract between the parties requiring Harris and Lindsey to develop the subject property for oil, gas, and other minerals. We disagree. As we have noted, there is no time specified in the instrument for any development. Further, the language in the instrument presents no requirement for Harris and Lindsey to actually develop the property. However, Appellees contend that there was an implied covenant that Harris and Lindsey would develop the property for oil, gas, and other minerals. This is the same argument made by the landowners in *Danciger Oil & Refining Co. of Tex. v. Powell*, 154 S.W.2d 632 (Tex. 1941). There, the Texas Supreme Court held that there is no implied covenant for development when there is language of an unconditional conveyance and the instrument is silent about whether the grantee is required to either explore the land for oil and gas or develop it in any manner after the

7

discovery thereof. *Id*. at 636. The holding in ***Powell*** applies here. Therefore, the 1906 instrument does not include an implied covenant for development.

An oil and gas lease is a fee simple determinable estate. *See **Jupiter Oil Co. v. Snow***, 819 S.W.2d 466, 468 (Tex. 1991). This means that when it terminates, the mineral estate reverts to the grantors of the lease, their heirs, or assigns. *Id.* In contrast, a mineral deed does not contain such limitations or qualifications on the mineral interest conveyed. *See **Loomis v. Gulf Oil Corp***., 123 S.W.2d 501, 504 (Tex. Civ. App.—Eastland 1938, writ ref'd). In this case, based on the language of the 1906 instrument, there were no limits on the one-half mineral interest being conveyed by the Millses to Harris and Lindsey. To construe the instrument any other way would have the effect of rewriting it, which we are not authorized to do. *See **Consol. Petroleum, Partners, I, LLC v. Tindle***, 168 S.W.3d 894, 899 (Tex. App.—Tyler 2005, no pet.).

Appellees also contend that the 1906 instrument was a contract for exploitation of minerals and that the conditions described in the first paragraph of the instrument weigh in favor of its being classified as a mineral lease rather than a mineral deed. *See **Cont'l Royalty Co. v. Marshall***, 239 S.W.2d 837, 838 (Tex. Civ. App.—Texarkana 1951, no writ). In that case, an instrument entitled "Contract" stated that the landowners "do hereby bargain, sell and convey unto the Continental Royalty Company, a Corporation, an undivided one-half interest in and to all mineral rights, in and under the following described tract of land . . . ." *Id*. However, the contract further stated that the sale of mineral rights was conditioned on a good and merchantable title to said property and that following delivery of such, the contract would have to be approved by the board of directors of the Continental Royalty Company. *Id*. at 839. According to the evidence at trial, the landowners never took the steps necessary to show that they had a good and merchantable title to the real property and the Continental Royalty Company's board of directors never approved the sale described in the contract. *Id*. at 840. The Texarkana court determined that even though there were words of conveyance used, the instrument was not a deed. *Id*. at 840. The court stated that "if from the whole instrument it is manifest that further conveyances were contemplated by the parties, it will be considered an agreement to convey and not a conveyance." *Id*. at 840-41.

In the instant case, there were no further conveyances contemplated in the instrument. Harris and Lindsey were to perform future services as part of the consideration. Performance of the services was not a condition to the transfer of the minerals to them. The 1906 instrument is much more similar to the instrument reviewed by the Fort Worth court of civil appeals in ***Crumpton v. Scott***, 250 S.W.2d 953 (Tex. Civ. App.—Fort Worth 1952, writ ref'd n.r.e.). In that case, the

8

landowners conveyed one-third of their mineral interest to an attorney for services he was to perform regarding the land. *Id*. at 954. The landowners' successors in interest contended that the instrument was merely an executory contract and that the attorney never performed the services described in the mineral deed. *Id.* The Fort Worth court held that the instrument was valid on its face and therefore was effective to pass title to one-third of the minerals owned by the grantors on the date of its execution. *Id*. at 955. The court went on to say that the landowner had the right to set aside the deed if the attorney had failed to perform his services but no such suit had been pursued. *Id*. at 956. In reaching its ultimate conclusion, the court reasoned that the law favors a rule of construction requiring an interpretation under which a deed will be valid and operative in preference to one that will nullify it. *Id*.

In the case before us, the 1906 instrument includes a number of recitals regarding the services to be performed by Harris and Lindsey. The record does not reflect that the Millses made any attempt to set aside the 1906 instrument for failure of consideration. This further supports that the 1906 instrument was not a mineral lease.

Based upon the foregoing analysis, we hold that the 1906 instrument is an unambiguous mineral deed by which the Millses conveyed a one-half interest in the minerals under the subject property to Harris and Lindsey. We likewise hold that the trial court erred in concluding that the 1906 instrument was an executory contract. Moreover, we hold that the trial court erred when it concluded that the law supplied a term in the 1906 instrument that Harris and Lindsey's alleged obligations must be performed within a reasonable time, that a reasonable time for performance had passed, and that the mineral interest therefore reverted to Appellees.

## Effect of the 1908 Release

Appellants contend that the 1908 release refers to an unrecorded oil and gas lease. Appellees argue that the release related back to the 1906 instrument, which we have construed to be a mineral deed.

When an instrument connects itself with a prior conveyance through its recitals, the two conveyances are to be construed together to determine the intention and effect of the instruments. *Tate v. Sartain*, 793 S.W.2d 45, 47 (Tex. App.—Texarkana 1990, writ denied). We must look within the "four corners" of the release to determine whether it connects itself with the 1906 mineral deed or an unrecorded instrument. *See* **Luckel**, 819 S.W.2d at 461; *see also* **Stribling**, 458 S.W.3d at 20. Appellees argue that the only document recorded and in their chain of title that the 1908 release could possibly connect to is the 1906 instrument. A purchaser is bound by every

recital, reference, and reservation contained in or fairly disclosed by any instrument that forms an essential link in the chain of title under which the purchaser claims. *See Westland Oil Dev. Corp. v. Gulf Oil*, 637 S.W.2d 903, 908 (Tex. 1982). Appellants respond that it is not unusual for instruments relating to the exploration of oil, gas, and other minerals to be unrecorded. *See id.*

The 1908 release states that it is releasing an instrument dated July 9, 1907. The 1906 mineral deed was executed on July 9, 1906. The 1908 release specifically refers to the document being released as a "contract" or "lease," but never describes it as a "deed." The release specifically states that "by the terms of said contract or lease the time for said development has expired rendering null and void said lease." The 1906 mineral deed includes no language specifying a time period for the development of oil, gas, or other minerals. The 1908 release states that the "contract or lease" was delivered to the Nacogdoches Land Company, a firm composed of Robert Lindsey and June C. Harris. No reference to "the Nacogdoches Land Company" appears in the 1906 mineral deed. Only three of the six grantors in the 1906 mineral deed are mentioned as having signed the "contract or lease." None of the three wives listed in the 1906 mineral deed are listed as having joined in the 1907 instrument. Further, it appears the same three men signed both the 1907 instrument and the 1906 mineral deed. However, only initials or nicknames are used to refer to those who executed the 1907 instrument rather than the more formal first names used in the 1906 instrument. Finally, although it is not within the four corners of the 1908 release, we think it is significant that the recording information for the 1906 mineral deed is omitted from the 1908 release. Generally, the recording information for the instrument to be released is specified in the release itself.

Appellees contend there is a latent ambiguity in the 1908 release that can be properly explained by parol evidence, which would connect the 1908 release to the 1906 instrument. A latent ambiguity arises when a contract that is unambiguous on its face is applied to the relevant subject matter and an ambiguity appears by reason of some collateral matter. *Ludwig v. Oncor Med., L.P.*, 191 S.W.3d 285, 290 (Tex. App.—Austin 2006, pet. denied). If a latent ambiguity arises from this application, extrinsic evidence is admissible for the purpose of ascertaining the true intention of the parties as expressed in the agreement. *Id*. Appellees contend that "1907" was mistakenly placed in the 1908 release when, in fact, the drafters meant "1906."

A latent ambiguity exists when the contract appears to convey a sensible meaning on its face, but it cannot be carried out without further clarification. *Id*. A latent ambiguity does not readily appear in the language of a document, but instead arises from a collateral matter once the

document's terms are applied or executed and two or more possible meanings arise. *See Latent Ambiguity*, BLACK'S LAW DICTIONARY (10th ed. 2014). Here, the 1908 release refers to a "contract or lease" executed in 1907 that has expired under its own terms. In contrast, the 1906 instrument is a conveyance of a mineral interest by deed without limitation. The numerous differences we described between the 1906 mineral deed and the "contract or lease" described by the 1908 release lead to the conclusion that the release of a 1907 contract or lease is not simply a mistaken date reference. The 1906 mineral deed and the 1908 release are unambiguous on their face. Applying both of them to the relevant subject matter, as expressed in the language of the documents, results in the conclusion that the 1908 release refers to some instrument other than the 1906 mineral deed, such as an unrecorded oil and gas lease. In other words, the reference to a 1907 instrument in the 1908 release does not create a latent ambiguity when applied to the 1906 mineral deed.

Similarly, Appellees contend in a short paragraph in their brief that the error was one of mutual mistake, and that extrinsic evidence is admissible to show the parties' true intent. Appellees did not allege this theory in their pleadings or argue it in the trial court. But even if they had, we have concluded that both instruments are unambiguous on their face, and that given the numerous differences in the terms of the instruments, they are unconnected and no latent ambiguity is created when construing them. Parol evidence cannot be used to create an ambiguity in an unambiguous instrument. *See **Kachina Pipeline Co., Inc. v. Lillis***, 471 S.W.3d 445, 450 (Tex. 2015).

Appellees also argue that the parol evidence rule does not prohibit the admission of evidence to contradict a false recital regarding the date a contract was signed. *See **Carr v. Christie***, 970 S.W.2d 620, 625 (Tex. App.—Austin 1998, pet. denied). ***Carr*** involved the allegation of fraud by one of the signatories to an employment contract. The respondent to a summary judgment motion attempted to show that the employment contract had been signed on a different date than the one stated. *Id*. at 622-24. When fraud is alleged, parol evidence is admissible to vary the terms of a contract or deed. *See **Lindsey v. Clayman***, 254 S.W.2d 777, 780 (Tex. 1952). Here, Appellees did not allege fraud in the execution of the release.

As further argument that parol evidence may be used to show the date listed in the 1908 release was incorrect, Appellees cite us to ***Maupin v. Chaney***, 163 S.W.2d 380 (Tex. 1942). In that case, a foreclosure sale was challenged based on the property description in a deed of trust. ***Id.*** at 383. The deed of trust stated that the property described was the same property conveyed by two named grantors to two named grantees on April 18, 1929. ***Id.*** Parol evidence showed that the only deed involving those grantors and grantees was actually dated April 9, 1929. ***Id.*** The court allowed

the use of parol evidence, holding that if there appears in the instrument enough information to enable one by pursuing an inquiry based upon the information to identify particular property to the exclusion of others, the description will be held sufficient. *Id.* The court repeated the general rule that a description is adequate when it refers to another instrument that contains a proper description of the property. *Id.*

Those facts are distinguishable from the instant case. Here, all parties with knowledge of the transactions who could have testified are deceased, and in any event, as we have concluded, the instruments are unambiguous. Moreover, the parol evidence offered by Appellees consists of testimony from an attorney who had reviewed the 1906 mineral deed and 1908 release. He offered possible explanations as to why the release included the "1907" date rather than "1906." Such opinion testimony of a witness more than one hundred years after the document was signed can only be conclusory or speculative. Opinion testimony that is conclusory or speculative is not relevant evidence, because it does not tend to make the existence of a material fact "more probable or less probable." *City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009) (citing TEX. R. EVID. 401). This testimony could not be considered to vary the terms of an unambiguous instrument.

We hold that the 1908 release is unambiguous and that it does not have a connection to the 1906 mineral deed. Consequently, the trial court erred in determining otherwise and considering extrinsic evidence to construe the instruments.

Appellants' first issue is sustained. Because we have sustained Appellants' first issue, we need not address their second, third and fourth issues. *See* TEX. R. APP. P. 47.1.

## STIPULATION

Finally, the parties made a stipulation that applies if we hold that Harris and Lindsey acquired the mineral interest in the 1906 instrument unaffected by the 1908 release. This is the conclusion we have reached on appeal, and accordingly, the stipulation applies. In essence, the parties stipulated that Appellees nevertheless own a small percentage of the disputed interest that is the subject of this appeal. Specifically, the parties stipulated as follows:[4]

---

[4] The "Parrish Trust Parties" and "Lummis Parties" identified in the Stipulation are Appellants. The "Mills Parties" are Appellees. The "Disputed Interest" was defined as follows:

  that undivided one-half of the oil, gas and other minerals which Parrish Trust Parties and Lummis Parties have asserted in this lawsuit was conveyed by the 1906 Instrument to June C. Harris and Robt. Lindsey and which the Mills Parties have asserted either was not conveyed by the 1906 Instrument or

12

The interest, if any, of June C. Harris and Robt. Lindsey, the grantees in the 1906 Instrument, in and to the Disputed Interest is currently vested in and owned by the following:

> a. Parrish Trust Parties collectively own an undivided 83.3334% of such interest;

> b. Lummis Parties collectively own an undivided 12.5000% of such interest; and

> c. as a result of acquisitions from Thomas L. Husbands, Robbie V. Russell, and Triple Crown Acquisitions, LLC, the Mills Parties collectively own an undivided 4.1666% of such interest.

The chain of title out of June C. Harris and Robt. Lindsey into such current owners is reflected and disclosed by the instruments in the attached Exhibit "C."

After trial, Appellants filed a motion to reopen the evidence and a motion for trial amendment to correct the stipulation. They believe that the supporting documents in Exhibit "C" show that Appellees own only half of the stipulated percentage, or 2.0833%, and that Appellants erred in stipulating to 4.1666%. The trial court overruled the motions. In their brief and response to Appellees' motion for rehearing, Appellants specifically stated that they have not appealed the orders overruling those motions. Rather, they "elected to limit this appeal to the final judgment," and took this course of action "in favor of focusing on the main issues, being construction of the 1906 Deed and 1908 Release."

A stipulation is a binding contract between the parties and the court. *McCuen v. Huey*, 255 S.W.3d 716, 726 (Tex. App.—Waco 2008, no pet.). The contents of a stipulation constitute judicial admissions, are conclusive on the issues addressed, and estop the parties from claiming to the contrary. *See Shepherd v. Ledford*, 962 S.W.2d 28, 33 (Tex.1998). A stipulation of fact is also binding on the reviewing court. *M.J.R.'s Fare of Dallas, Inc. v. Permit & License Appeal Bd. of Dallas*, 823 S.W.2d 327, 330 (Tex. App.—Dallas 1991, writ denied). Although the trial court has the power to modify or set aside a stipulation, if it is not set aside, it is conclusive as to the facts stipulated. *Guerrero v. Smith*, 864 S.W.2d 797, 801 (Tex. App.—Houston [14th Dist.] 1993, no writ).

Accordingly, the parties are bound by their stipulation. Appellants specifically explained that they do not challenge the trial court's orders overruling their motions to reopen the evidence and for trial amendment to correct the stipulation. Because Appellants expressly waived our consideration of that issue, yet now ask that we address it for the first time on rehearing, we decline

---

was reconveyed to the grantors of the 1906 Instrument by the 1908 Release, being the interest at issue in this lawsuit.

13

to address the denial of their motions.  *See **Cameron Cnty. v. Velasquez***, 668 S.W.2d 776, 784 (Tex. App.—Corpus Christi 1984, writ ref'd n.r.e.) (argument about judicial admission raised for first time in motion for rehearing was waived).  Consequently, we hold that Appellees own an undivided 4.1666% of the disputed mineral interest in accordance with the parties' stipulation.

#### DISPOSITION

We have sustained Appellants' first issue, which is dispositive.  Accordingly, we *reverse* the trial court's judgment and *render* judgment that Appellees take nothing, and that they have no interest in the oil, gas, and other minerals in the real property described in and as conveyed by the mineral conveyance recorded in Volume 64, Page 64 of the Deed Records of Nacogdoches County, Texas, save and except, in accordance with the parties' stipulation, an undivided 4.1666% interest collectively as a result of acquisitions from Thomas L. Husbands, Robbie V. Russell, and Triple Crown Acquisitions, LLC.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered December 30, 2016.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**DECEMBER 30, 2016**

**NO. 12-15-00170-CV**

**LINDA ANN PARRISH RICHARDSON AND GARY BRUCE RICHARDSON, CO-TRUSTEES OF THE M.C. PARRISH, JR. TESTAMENTARY TRUST;** *JUDY* **CLEVELAND HUPPERT; JAMES COOKE WILSON, INDIVIDUALLY, AS CO-INDEPENDENT EXECUTOR OF THE ESTATE OF BETTY VIRGINIA KILEY WILSON, DECEASED, AND AS TRUSTEE OF ALL TRUSTS CREATED UNDER THE WILL OF BETTY VIRGINIA KILEY WILSON; MARGARET WILSON RECKLING, INDIVIDUALLY, AS CO-INDEPENDENT EXECUTRIX OF THE ESTATE OF BETTY VIRGINIA KILEY WILSON, DECEASED, AND AS TRUSTEE OF ALL TRUSTS CREATED UNDER THE WILL OF BETTY VIRGINIA KILEY WILSON; RANSOM CLARK LUMMIS; JANIE GRANGER SPICER; THOMAS S. DAVISON; FREDERICK R. LUMMIS II; PALMER BRADLEY LUMMIS; LINDA ANN PARRISH RICHARDSON AND GRAY BRUCE RICHARDSON, AS CO-TRUSTEES OF THE M.C. PARRISH, JR. TESTAMENTARY TRUST; ROBERT L. BRADLEY, JR.; WILLIAM R. LUMMIS, JR.; CLYTIE HARRIS THOMAS PHELPS; MARY GAIL THOMAS CAMPBELL; JOHN K. HARDY; AND JOHN TURNER NEVITT,**
Appellants
V.
**DONALD ROGER MILLS, RHONDA MILLS, AND BEVERLY MILLS POOL,**
Appellees

---

Appeal from the 145th District Court

of Nacogdoches County, Texas (Tr.Ct.No. C1127605)

---

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, it is the opinion of this Court that there was error in the judgment as entered by the trial court below and that the same should be reversed and judgment rendered.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court in favor of Appellees, **DONALD ROGER MILLS, RHONDA MILLS, AND BEVERLY MILLS POOL**, be, and the same is, hereby **reversed**, and judgment is **rendered** that Appellees, **DONALD ROGER MILLS, RHONDA MILLS, AND BEVERLY MILLS POOL**, take nothing, and that they have no interest in the oil, gas, and other minerals in the real property described in and as conveyed by the mineral conveyance recorded in Volume 64, Page 64 of the Deed Records of Nacogdoches County, Texas, save and except, in accordance with the parties' stipulation, an undivided 4.1666% interest as a result of acquisitions from Thomas L. Husbands, Robbie V. Russell, and Triple Crown Acquisitions, LLC.

All costs in this cause expended both in this Court and the trial court below be, and the same are, adjudged against the Appellees, **DONALD ROGER MILLS, RHONDA MILLS, AND BEVERLY MILLS POOL,** for which let execution issue; and that the decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*