BNSF RAILWAY COMPANY,
Appellant,

v.

CHEVRON MIDCONTINENT, L.P.; Robert Benson Jones; Rhett D. Bentley; March Ranch, L.L.C.; Ponderosa Royalty, L.L.C.; Marquerite Cox Stell Bartlett; Barbara Stell Prunity; William H. Goode IV; Andrew A. Goode; Susan L. Smith; Gayle Francis Whipkey Nelson; Amy Smallwood; Mary Smallwood; Caroline Delamatre; Edith Smallwood Ledonne; Margaret Greene Bladine; and, Brown Royalties, Appellees.

No. 08–16–00119–CV

Court of Appeals of Texas,
El Paso.

March 22, 2017

Robert Green Hargrove Osborn, Griffith & Hargrove, Austin, TX, for Appellant.

Margaret Greene Bladine, McMinnville, OR, pro se.

Ronald Holman, Holman Robertson Eldridge, PC, Dallas, TX, for Appellee Bentley.

Harper Estes Lynch, Chappel & Alsup, Steven C. Kiser Lynch, Chappell & Alsup, Midland, TX, for Appellee Chevron.

George S. Finley, Smith Rose Finley P.C., San Angelo, TX, for Appellee March Ranch LLC.

Rob Crumpler Davis, Gerald & Cremer, Midland, TX, for Remaining Appellees.

Brown Royalties c/o Deborah Brown Grissen, San Angelo, TX, for Appellee Brown.

Before McClure, C.J., Rodriguez, and Palafox, JJ.

## OPINION

YVONNE T. RODRIGUEZ, Justice

He who owns the soil owns everything from the heights of Heaven down to the depths of Hell—or so the old Latin maxim goes.[1] If only Texas land law was that simple.

After learning that the defendants (collectively "Chevron") struck oil underneath railroad tracks in Upton County, Texas, BNSF Railway Company sued for trespass to try title, arguing that a 1903 deed granted to BNSF's predecessor gave the company not just a right of way easement, but the entire strip of land described in the deed—from Heaven to Hell—in fee simple absolute. Chevron countered that the 1903 Deed only granted BNSF the right to pass trains over that strip of land; what lay beneath the train-tracks was free and clear of BNSF's interest and had been properly leased to Chevron by a separate

deed. On cross-motions for summary judgment, the trial court sided with Chevron. BNSF appealed.

We must decide whether by virtue of the 1903 Deed, BNSF controls both the surface and mineral estates or whether it merely holds an easement over the surface estate. After reading the deed, we find that the trial court correctly determined that BNSF holds only an easement over the land. The judgment of the trial court is affirmed.[2]

## BACKGROUND

■ On October 21, 1903, W.H.C. Goode, for one dollar and "the benefits which will accrue ... by reason of the construction of a line of railroad over the land hereinafter described[,]" signed a deed in Ohio conveying an interest in his Texas land to the Panhandle & Gulf Railway Company. What exactly that interest was is in dispute. The 1903 Deed begins by stating:

WITNESSETH, That the said party of the first [Goode], for and in consideration of One Dollar ... and of the benefits which will accrue to the party of the first part by reason of the construction of a line of railroad over the land hereinafter described ... has GRANTED, BARGAINED, SOLD and RELINQUISHED, and by these presents does GRANT, BARGAIN, SELL, RELIN-

---

1. *See Alyce Gaines Johnson Special Trust v. El Paso E & P Co., L.P.*, 773 F.Supp.2d 640, 645 (W.D.La. 2011)(translating Latin maxim *cujus est solum ejus est usque ad coelum et ad inferos* as "for whoever owns the soil, it is theirs up to Heaven and down to Hell"); *see also Cujus est solum, ejus est usque ad coelum et ad inferos*, BLACK'S LAW DICTIONARY 1628 (7th ed. 1999)("Whoever owns the soil owns everything up to the sky and down to the depths.").

2. Appellees Robert Benson Jones, Marguerite Cox Stell Bartlett, Barbara Stell Prunty, Wil-

liam H. Goode IV, Andrew A. Goode, Susan L. Smith, Gayle Frances Whipkey Nelson, Amy Smallwood, Mary Smallwood, Caroline Delamatre, Edith Smallwood Ledonne, Ponderosa Royalty L.L.C., and Rhett D. Bentley filed notices that they joined in and adopted Appellee Chevron Midcontinent's brief on appeal. March Ranch, L.L.C. and Brown Royalties are parties to this appeal but did not file appellate briefs or notices of joinder.

QUISH and CONVEY unto the said party of the second part [Panhandle], and unto its successors and assigns, for a right of way, that certain strip of land hereinafter described, as the same has been finally located over, through or across the following tracts of land situated in Upton County in the State of Texas ....[3]

■ The deed then describes a line traced by surveyors across various plots of land and between various train stations. Using this line as a reference point, the 1903 Deed continues to describe the width of the "right of way:"

> The said railway right of way being 100 feet wide on each side of the center line thereof except [for certain sections where the right of way varies between 50 feet and 150 feet] ... Said railway right of way containing an area of 28 and 55/100 acres. Together with the right and privilege of taking and using all of the wood, water, stone, timber and other materials on said strip of land, or appertaining thereto, which may be useful or convenient in the construction and maintenance of said railway or any part thereof.

The 1903 Deed concludes with the following habendum clause:[4]

> TO HAVE AND TO HOLD the said premises, together with all appurtenances thereunto belonging, in fee simple, unto the said part of the second part [Panhandle] its successors and assigns forever.

---

3. This portion of the deed is called the granting clause. "The purpose of the granting clause is to define and designate the estate conveyed." *Richardson v. Mills*, 514 S.W.3d 406, 414–15, 2017 WL 511893, at *4 (Tex. App.–Tyler Feb. 8, 2017, no pet. h.)(op. on reh'g).

4. A habendum clause is "the part of ... a deed ... that defines the extent of interest

## DISCUSSION

### *For a right of way, that certain strip of land.*

At issue here is what exactly that phrase means in the 1903 Deed's granting clause, particularly in light of other clashing deed provisions that, on one hand, suggest that BNSF as assignee holds a "certain strip of land ... in fee simple ... forever," and, on the other hand, imply that the 1903 Deed conveys only a right-of-way easement over a strip of land, not the land itself. We read deeds as one cohesive document, and do not cherry-pick phrases and read them in isolation, but rather harmonize conflicting provisions to the best extent possible. Neither side argues that this deed is ambiguous; both argue that the deed is clear, and that it militates in their favor. But are both parties wrong? Can these apparently contradictory provisions actually be harmonized, or is this deed ambiguous on its face?

### *Standard of Review and Textual Interpretation Principles*

■ Summary judgment is an appropriate disposition where there is no genuine issue of material fact and a party is entitled to judgment as a matter of law. Tex. R.Civ.P. 166a(c). When the parties file dueling cross-motions for summary judgment in the court below, this Court may render whatever judgment the trial court should have rendered. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001).

---

being granted and any conditions affecting the grant." [Internal citation omitted]. *Anadarko Petroleum Corp. v. BNW Prop. Co.*, 393 S.W.3d 846, 851 n.6 (Tex.App.–El Paso 2012, pet. denied). "The introductory words to the clause are ordinarily *to have and to hold*." [Emphasis in orig.]. BLACK'S LAW DICTIONARY 716 (7th ed. 1999).

The standard of review we apply in a deed construction case decided on summary judgment is tied directly to whether the deed is clear on its face. We interpret an unambiguous deed *de novo*, but we review the interpretation of an ambiguous deed as a mixed question of fact and law. *Chesapeake Expl., L.L.C. v. Energen Res. Co.*, 445 S.W.3d 878, 881 (Tex.App.–El Paso 2014, no pet.); *Victory Energy Corp. v. Oz Gas Corp.*, 461 S.W.3d 159, 172 (Tex.App.–El Paso 2014, pet. denied). As such, the threshold question here for summary judgment purposes is whether the deed is ambiguous on its face. If the deed is clear, we need not defer to the trial court and may simply read it ourselves and render the appropriate summary judgment, as there is no genuine issue of material fact as to what the deed says. If the deed is unclear, we apply the usual summary judgment standard, and uphold the trial court if there is no genuine issue of material fact and the movant was entitled to judgment as a matter of law. *Id.* Summary judgment is generally inappropriate in a case involving an ambiguous deed, as the ambiguity creates a fact issue on intent. *Combest v. Mustang Minerals, L.L.C.*, 502 S.W.3d 173, 179 (Tex.App.–San Antonio 2016, pet. filed).

A deed is not ambiguous merely because certain provisions of the deed conflict or appear to be internally inconsistent. Only when two or more reasonable interpretations of the deed emerge after the canons are applied do courts find that the deed is ambiguous and open the door to parol evidence on intent. *Clayton Williams Energy, Inc. v. BMT O & G TX, L.P.*, 473 S.W.3d 341, 348 (Tex.App.–El Paso 2015, pet. denied). When interpreting a deed, as with statutes and other texts, we look only to the four corners of the instrument and employ the usual canons of textual construction. *Id.* "We must assume the parties to the instrument intended every clause to have some effect; therefore, the language of the deed should be interpreted so that no clause is rendered meaningless." *Richardson*, 514 S.W.3d at 413, 2017 WL 511893, at *3. "The court should 'not strike down any part of the deed, unless there is an irreconcilable conflict wherein one part of the instrument destroys in effect another part thereof.'" [Internal citation omitted]. *Luckel v. White*, 819 S.W.2d 459, 462 (Tex. 1991).

We bear in mind that the canons are useful aids, but our primary purpose in constructing a deed is to give effect to the parties' intent. "That intention, when ascertained, prevails over arbitrary rules." *Id.*

### Analysis

In its sole appellate issue, BNSF contends that the 1903 Deed unambiguously creates a fee simple estate along the entire length of the right-of-way. Subsumed within this appellate point and Chevron's response are three discrete questions we must answer. First, does the use of the phrase "right of way" conclusively show that only an easement was conveyed by the railroad deed? If not, does the use of the phrase "right of way" in the granting clause trump later conflicting provisions suggesting conveyance of a fee estate as a matter of law? Finally, if the answer to the first two questions is no, should we reverse summary judgment in light of a potential textual ambiguity needing evidentiary resolution, or is the deed when read as a whole clear enough to allow only one reasonable interpretation of intent to prevail?

### Does Use of the Phrase "Right of Way" Automatically Convey Only an Easement?

Chevron maintains that this case is straightforward, and that the deed's use

of the phrase "right of way" clearly shows that the deed conveyed only an easement. In support of its contention, Chevron cites cases from other states in which the use of the phrase "right of way" in a railroad deed established that the interest conveyed by the deed was merely an easement and not title to the entire estate.[5] We have reviewed the cases cited, and though they offer us some outside perspective, they are ultimately unhelpful here. While use of the phrase "right of way" in a railroad deed may answer the easement-versus-fee question conclusively in other states, it does not answer the question in Texas.

As BNSF correctly points out, in this state, the term "right of way" is not a legal term of art with a set definitive meaning when used in a deed, but rather may be used in two senses. "[S]ometimes [it] is used to describe a right belonging to a party, a right of passage over any tract; and it is also used to describe that strip of land which railroad companies take upon which to construct their road-bed." *Tex. Elec. Ry. Co. v. Neale*, 151 Tex. 526, 252 S.W.2d 451, 454 (1952). "Accordingly, use of the term 'right of way' in a deed or other document does not necessarily define or limit the estate conveyed." *Union Pac. Ry. Co. v. Ameriton Props., Inc.*, 448 S.W.3d 671, 679 (Tex.App.–Houston [1st Dist.] 2014, pet. denied). Indeed, while Chevron in its brief insists that it would be nearly *per se* unreasonable to assume that

a railroad deed that identifies a long, narrow strip of land 50 to 100 feet wide would convey anything but an easement, conveyance of rights-of-way in fee simple is not outside the realm of possibility. Unlike in other states, railroad companies have been allowed by statute to own Texas land outright since at least 1877. *See* Act approved Aug. 15, 1876, 15th Leg., R.S., ch. 98 § 23, 1876 Tex.Gen.Laws 141, 147, *reprinted in* 8 H.P.N. Gammel, The Laws of Texas 1822–1897, at 980, 984 (Austin, Gammel Book Co. 1898)(granting a railroad company, as a power incident to its incorporation, the rights to "[t]o take and hold such voluntary grants of real estate and other property as shall be made to it in aid of the construction and use of its railway" and "[t]o purchase, hold and use all such real estate and other property as may be necessary for the construction and use of its railway and the stations ... "); *Calcasieu Lumber Co.*, 13 S.W. at 453–54 (confirming that reference to right-of-way easements in the railroad condemnation statutes did not otherwise prohibit railroad companies from purchasing or receiving land in fee simple). And contrary to Chevron's assertions, some Texas railroad deeds crafted with similar unusual physical parameters as this deed *did* in fact convey full title in a 50–to–100–foot strip of land to the railroad. *Brightwell v. Int'l–Great N. R.R. Co.*, 121 Tex. 338, 49 S.W.2d 437, 439–40 (1932)(deed conveyed 200–foot-wide strip of land in fee simple); *Calcasieu Lumber*

---

5. *See State ex rel. State Highway Comm'n v. Union Elec. Co. of Missouri*, 347 Mo. 690, 148 S.W.2d 503, 505–06 (1941)(Missouri case holding that the state's railroad laws prohibited railroad companies from acquiring fee title in land conveyed for rights-of-way and noting that "[a] right of way, in its legal and generally accepted meaning in reference to a railroad company's interest in land is a mere easement for railroad purposes in the lands of others"); *Sherman v. Petroleum Expl.*, 280 Ky. 105, 132 S.W.2d 768, 770–71 (1939)(Kentucky case

suggesting that an ambiguous railroad deed purporting to convey a right of way should be read to convey an easement and not a fee estate because it was commonly understood that "the estate or interest acquired by a railroad in land purchased by it for a right of way is generally construed to be an easement;" case also held that granting clause language conveying easement trumped habendum clause language suggesting the conveyance was in fee simple).

*Co. v. Harris*, 77 Tex. 18, 13 S.W. 453, 453–54 (1890)(deed conveyed 100–foot-wide strip of land to railroad in fee simple); *see also Right of Way Oil Co. v. Gladys City Oil, Gas & Mfg. Co.*, 106 Tex. 94, 157 S.W. 737, 739 (1913)(noting that while historically railroad rights-of-way were usually conveyed as easements, the "land ... may [also] be conveyed in fee; therefore the character of the title conveyed must be determined by the words used and the attending facts and circumstances").

We cannot draw broad conclusions. Right of way can mean two separate things in a Texas railroad deed. Our resolution of this case rests on interpretation of this phrase in specific context of this specific deed.

### Granting Clauses and the *Neale* Problem

The easement-versus-fee issue in interpreting a railroad deed is by no means novel. In 1952, the Texas Supreme Court in *Texas Electric Railway Co. v. Neale* identified a split in authority over how to interpret railroad deed, and it attempted to reconcile two disparate lines of cases by directing courts to look at a deed's granting clause, setting down the following rule:

> [A] deed which by the terms of the granting clause grants, sells and conveys to the grantee a 'right of way' in or over a tract of land conveys only an easement ... [but] a deed which in the granting clause grants, sells and conveys a tract or strip of land conveys the title in fee, even though in a subsequent clause or paragraph of the deed the land conveyed is referred to as a right of way.

6. This blended language makes this case distinguishable from *Ameriton*, upon which BNSF heavily relies. The granting clause in *Ameriton* unambiguously stated that the deed gave, granted, bargained, sold, and released

*Texas Elec. Ry. Co. v. Neale*, 151 Tex. 526, 252 S.W.2d 451, 453 (1952).

The *Neale* rule neatly resolves many deed disputes. *Compare, e.g., Union Pac. R.R. Co. v. Ameriton Props., Inc.*, 448 S.W.3d 671, 683 (Tex.App.–Houston [1st Dist.] 2014, pet. denied); *Brightwell*, 49 S.W.2d at 439–40 (granting clause that conveyed "[a]n equal undivided one-third of a tract of land" passed land in fee simple); *and Calcasieu Lumber Co.*, 13 S.W. at 454–55 (deed that conveyed "a strip of land" passed land in fee simple) *with Right of Way Oil* Co, 157 S.W. at 738 (deed conveying "for the purpose of constructing, operating and maintaining its railroad, the right of way, two hundred feet in width, over and upon the above-described tract of land" passed an easement).

The problem with the deed in this case is that, contrary to BNSF's contention, the language in the granting clause does not clearly convey only a strip of land, but rather straddles the line between the two different types of deeds, blending elements of both together. The opening recitals of the deed show that W.H.C. Goode recognized that benefits would inure to Goode "by reason of the construction of a line of railroad *over the land hereinafter described*," [emphasis added] and the granting clause did "GRANT, BARGAIN, SELL, RELINQUISH and CONVEY unto the said party of the second part, and unto its successors and assigns, *for a right of way, that certain strip of land* hereinafter described, as *the same has been finally located over, through or across the following tracts of land* situated in Upton County in the State of Texas ...." [Emphasis added].

"the *following described tract or parcel of land* ...." [Emphasis added]. 448 S.W.3d at 683. By contrast, the deed in this case has an ambiguous granting clause that could be read as granting either an easement or a fee estate.

So what do we do with this blended language? BNSF vehemently asserts that all things considered, the focus of the granting clause is "that certain strip of land," maintaining that the phrase "for a right of way" is a precatory, nonrestrictive clause that may state a purpose for the conveyance but in no way limits the nature of the estate being conveyed. *See Neale*, 252 S.W.2d at 456 ("[T]he declaration in a deed of the purpose for which land is conveyed or the use to be made of it does not impose a condition upon the title granted; nor does it operate to limit the grant to a mere easement."). Chevron counters that *Neale* and other cases establish that placement of the phrase "for a right of way" in a deed is critical; while placing a reference to a right of way later in the deed might result in a fee simple conveyance under *Neale*, here, the original contracting parties consciously grafted the phrase "for a right of way" directly onto and before the phrase "that certain strip of land" in the granting clause, which conclusively showed they intended the interest in land to be limited to use "as a right of way,"—in other words, as an easement. *See Rio Bravo Oil Co. v. Hunt Petroleum Corp.*, 439 S.W.2d 853, 858–59 (Tex.Civ. App.–Tyler 1969, writ granted), *rev'd on other grounds*, 455 S.W.2d 722 (Tex. 1970)(noting that "where *the granting clause* in a deed to a railroad company *declares the purpose of a grant* to be a right-of-way over and across a tract of land, it is a conveyance of a mere easement in the property and not a conveyance of the fee simple estate therein")[Emphasis added].

BNSF's reading of the clause is grammatically correct: the phrase "for a right of way" modifies the subject "that certain strip of land." But that is not dispositive of what was conveyed. The question is not whether the phrase "right of way" grammatically modifies "that certain strip of land;" the question is whether that modification also serves to *restrict* the grant. While BNSF tries to argue that any descriptive phrase is meaningless if the granting clause uses the phrase "strip of land," *Neale* makes clear that a statement of purpose does not debase what is conveyed in a granting clause if that statement of purpose appears "*in a subsequent clause or paragraph* of the deed." [Emphasis added]. *Neale*, 252 S.W.2d at 453. *Neale* does not say that a statement of purpose contained in a *granting* clause is similarly unavailing. We are persuaded that the placement of the statement of purpose in the granting clause means something. *Accord Rio Bravo Oil Co.*, 439 S.W.2d at 858–59. And in truth, when read in isolation, the granting clause can be fairly construed as conveying either an easement *or* a tract of land. The rights being conveyed in that strip of land are unclear by the terms of this granting clause. In other states, this ambiguity would be resolved as a matter of policy in favor of making an easement. *See, e.g., Sherman*, 132 S.W.2d at 770–71 (summarizing Kentucky rule that ambiguous railroad deed are interpreted in favor of creating an easement). But this is Texas. We indulge no such presumptions here. "A court's purpose in construing a deed is to arrive at and effectuate the grantor's true intent . . . not to enforce arbitrary rules of construction that are based solely on considerations of public policy." *Red Boot Prod. Co., Inc. v. Sam-*

---

Further, in *Ameriton*, there were context clues in other parts of the deed showing that the parties intended to convey the land in fee simple. For example, the grantor reserved for herself "the right to all timber upon the tract given for right of way," which the Houston Fourteenth Court took as evidence that the grantor wished to convey all her other rights. *Id.* Here, as we explain later, the context clues point us in a different direction.

son Expl., L.L.C., No. 09-14-00191-CV, 2015 WL 5730789, at *5 (Tex.App.–Beaumont Oct. 1, 2015, no pet.)(mem. op.)(citing *Rio Bravo Oil Co. v. Weed*, 121 Tex. 427, 50 S.W.2d 1080, 1085 (1932)). Given that the granting clause is ambiguous, we must look to the remainder of the deed to give us a gloss on what the parties meant to convey. *Cf. Gulf Coast Water Co. v. Hamman Expl. Co.*, 160 S.W.2d 92, 95 (Tex.Civ. App.–Galveston 1942, writ ref'd)(holding that where granting clause used ambiguous "property and premises" language that could have conveyed either a fee estate or an easement, the remainder of deed clarified what was conveyed in the granting clause).[7]

Unfortunately, the remainder of the deed is similarly problematic.

### Fee or Easement? Look "Over, Across, and Through" the Deed to the "Wood, Water, Stone, [and] Timber"

A court should strive to give meaning and effect to all phrases in a deed, if possible. Both parties seize on this rule, with each side asserting that we cannot accept the other's reading as reasonable without eviscerating the deed and leaving it in tatters. BNSF directs our attention to the habendum clause, in which the deed refers to the conveyance as being made in "fee simple." BNSF contends that this passage conclusively shows that BNSF's position is more reasonable, as we cannot read this deed as creating a mere easement without blotting out the words "fee simple."

On the other hand, Chevron points to a sentence in the descriptions summarizing the conveyance as being a "railway right of way containing an area of 28 and 55/100 acres. *Together with the right and privilege of taking and using all of the wood, water, stone, timber and other material on said strip of land, or appertaining thereto, which may be useful of convenient in the construction and maintenance of said railway or any part thereof.*" [Emphasis added]. Chevron then maintains that if the deed actually conveyed the entire strip of land in fee simple, the right to take and use all the natural resources on that strip of land should have also passed to the grantee, and yet the deed specifically mentions these resources as things granted separately. Like BNSF, Chevron reminds us that every word in a

7. We pause to note an anomaly that has emerged in the intervening years since *Neale* was decided. *Neale* emphasizes that we must look primarily to the granting clause when deciding whether a deed conveys a fee estate or an easement. This approach to deed analysis was consistent with a canon of interpretation stating the granting clause specifically overrode any other conflicting portions of the deed. But in 1991, the Texas Supreme Court in *Luckel v. White* walked back from a clause-driven constructional approach, emphasizing that courts should look to all four corners of a document and not place undue, formalistic stock in the value of some clauses over others or the relative location of language. *See* 819 S.W.2d at 463. Whether *Neale*'s clause-driven approach to deed construction survived the *Luckel* shift to a four corners approach is an open question. Indeed, it would seem that while *Neale* set out a bright-line test, *Luckel* blurs the line between when language appearing outside a granting clause functions as a non-restrictive recital of purpose or a restriction on the conveyance.

Nevertheless, we need not delve into those thorny issues here, since even under the formalistic *Neale* approach, the ambiguity in the granting clause itself would still require us to consider the remainder of the deed, which in effect leads to the same analysis as a four corners approach. *See Gulf Water Co.*, 160 S.W.2d at 95. And although *Gulf Water* precedes *Neale*, we find that its treatment of an ambiguous granting clause helps us thread the needle between the approaches taken by *Neale* and *Luckel* without upsetting decades of railroad deed case law. As such, we will use *Gulf Water* as our guide and bridge the gap between *Neale* and *Luckel* as best we can.

deed should be construed as having a meaning, if possible. And like BNSF, Chevron complains that we cannot take its opponent's reading as reasonable without rendering this passage dealing with natural resources totally redundant and meaningless.

Ultimately, the question here boils down to whether, in light of the conflicting language, two reasonable readings of the deed emerge, or whether only one reading is reasonable. Using a four corners approach and reading the deed as a whole, we find that Chevron's is the only reasonable reading of this deed. The interest conveyed in this deed is a surface easement. In support of our conclusion, we find the following factors to be persuasive:

- The opening recitals of the deed show that W.H.C. Goode recognized that he would receive valuable benefits if a railroad passed *over* the land he was conveying. Use of the word "over" in the opening clause show that Goode did not intend to convey the entirety of the land described, but only an easement. *See Gulf Coast Water Co.*, 160 S.W.2d at 95.

- The phrase "for a right of way" appears in the granting clause directly in front of phrase "that strip of land," and at the time the deed was written, the placement of the phrase in the granting clause before the words "that strip of land" would have been understood as limiting the nature of any subsequently described conveyance. Further, specifying that a conveyance was intended to be for a right of way in the granting clause would have trumped any subsequent repug-

nant recitals in the deed, including the fee simple language in the habendum clause. *Cf. Neale*, 252 S.W.2d at 453 (descriptions that land is intended to be a right of way are ineffective if they are outside the granting clause).

- The clauses describing the conveyance also reference a line traced by surveyors for the right of way that went "[o]ver, through and across" various sections of land. Again, the use of the words over, through, and across suggests that the conveyance was intended to be an easement.

- The deed specifies that the conveyance comes "[t]ogether with the right and privilege of taking and using all of the wood, water, stone, timber and other material on said strip of land, or appertaining thereto, which may be useful or convenient in the construction of maintenance of said railway or any part thereof." These rights would pass with a fee estate, and would not otherwise need to be specified in the deed. As the Supreme Court of Arkansas noted in interpreting similar language in a railroad deed, "[i]f a fee simple had been intended it would have been unusual, it would have been almost absurd, to take the precaution of assuring the grantee that it could take its own stone and gravel and borrow its own earth. Yet if an easement were meant the insertion of this language might well be considered a sensible precaution against future controversy." *Daugherty v. Helena & Nw. Ry.*, 221 Ark. 101,252 S.W.2d 546, 548 (1952).[8]

---

8.  BNSF answers Chevron's objection by asserting that the language granting the right to use the land's natural resources in constructing the railway *is*, in fact, a meaningless redundancy, and that we should not take it into consideration in construing the deed. In sup-

port of this contention, BNSF notes that the deed in *Brightwell v. Int'l–Great N. R.R. Co.*, 121 Tex. 338, 49 S.W.2d 437, 438, 440 (1932), was held to convey a fee estate despite the grantor's language stating that "for the considerations aforesaid, as herein set forth, I do

- The habendum clause allows the grantee "TO HAVE AND TO HOLD the said *premises*, together with all appurtenances thereunto belonging . . . ." [Emphasis added]. The word "premises" can be used to suggest that a conveyance transfers only an easement. *Cf. Gulf Coast Water Co.*, 160 S.W.2d at 95 (holding that the use of the phrase "property and premises" rendered granting clause ambiguous as to whether it conveyed a fee estate or an easement).

Still, even with all these factors weighing in favor of finding an easement, one problem lingers: what of the words "fee simple" in the habendum clause?

As Chevron points out, in other states the use of the phrase "fee simple" in the habendum clause would not stand as a bar to reading this deed as conveying an easement. Indeed, while both property lawyers and Texas case law on rights-of-way often use the phrase as a shorthand way of explaining that all the rights associated with a piece of property were transferred, the phrase "fee simple" does not necessarily only refer to the size of an estate or how many rights were conveyed in a transaction; it more precisely also refers to how long and under what conditions a given interest in land will endure. As Black's Law Dictionary makes clear, a fee simple is "[a]n interest in land that, being the broadest property interest allowed by law, *endures until the current holder dies with-*

*out heirs*; esp., a fee simple absolute." [Emphasis added]. BLACK'S LAW DICTIONARY 630 (7th ed. 1999). "Traditionally, the fee simple has two distinguishing features: first, the owner ('tenant' in fee simple) has the power to dispose of the fee simple, either inter vivos or by will; second, on intestacy the fee simple descends, in the absence of lineal heirs, to collateral heirs— to a brother, for example, if there is no issue." [Internal citation omitted]. *Id.* And while using the phrase "fee simple" may mean that the entire bundle of property rights has been transferred from one entity to another, other states have apparently recognized the concept of "an easement in fee simple," and held that language mixing an easement and the phrase fee simple simply means that an easement is held in perpetuity and may be disposed of at will, but the deed does not pass the underlying title to land to the grantee. *See, e.g., Englishmans Bay Co. v. Jackson*, 340 A.2d 198, 200 (Maine 1975)(recognizing that the precise interest granted by a right of way deed was "an easement in fee simple"); *McClung v. Sewell Val. R. Co.*, 97 W.Va. 685, 127 S.E. 53, 54 (1924)(recognizing that a railroad deed conveyed "an easement in fee simple" but did "not pass the land itself"); *Atlanta, B. & A. Ry. Co. v. Coffee Cty.*, 152 Ga. 432, 110 S.E. 214, 215 (1921)(when interpreting an easement granted in fee simple, "[t]he words 'fee simple' are descriptive of the extent of duration of the enjoyment of the ease-

further grant to said Company such earth, material, timber and rock as may be found on my lands herein mentioned . . . ." *Brightwell's* value here is limited. In the first place, the *Brightwell* court interpreted that phrase as allowing the grantee to go on *other lands* owned by the grantor and use those natural resources to construct the railway. *Id.* at 439. In the second place, the deed in *Brightwell* did not involve a blended granting clause like the one in this deed. Instead, the granting clause there clearly and unequivocally con-

veyed "a strip of (200) Two Hundred feet in width of land," with a single reference to a right of way appearing the description as an afterthought. *Brightwell*, 49 S.W.2d at 438. Under *Neale*, the unambiguous granting clause would knock out any contradictory language repugnant to that conveyance, which would mean reading the natural resource right allocation as being a redundancy. But we do not have an unambiguous granting clause here.

ment"); *Buffalo City Mills v. George H. Toadvine Lumber Co.*, 150 N.C. 114, 63 S.E. 678, 678–79 (1909)(holding that a "contract to convey an easement in fee simple" could not be construed "as a contract to convey the land itself").

Under an approach where "fee simple" could be contextually understood as a durational or conditional qualifier rather than an expression of an estate's size, there would be zero conflict between the granting clause and the habendum clause in the deed at issue in this case. Rather, the two clauses would harmonically answer two separate questions. The granting clause defines which bundle of property rights was transferred to BSNF's predecessors-in-interest; the habendum clause tells the recipients how long and under what conditions they can "have and hold" onto those rights. *See Richardson*, 514 S.W.3d at 414–15, 2017 WL 511893, at *4 (explaining, in context of oil-and-gas lease, the difference between a granting clause and an habendum clause). In this case, that time period for which the grantee could have and hold the easement is literally "forever," as the habendum clause shows that the original owner retained no interest in the estate being conveyed. In other words, the only thing the habendum clause states is that from that moment forward, BNSF's predecessors-in-interest could do whatever they pleased with the rights they received. But the operative question of what BNSF actually owns is answered both by the granting clause and the gloss put on that clause by the rest of the deed.

Chevron urges us to take this approach and read "fee simple" as talking about restrictions on alienation and heritability, not the size of the estate conveyed. While we find this approach to be rational, intuitive, and sensible, we have also found no Texas authority supporting the use of this approach or the existence of an "easement in fee simple," nor do we believe that, absent further guidance from the Texas Supreme Court, we could recognize such a doctrine, especially given the sharp distinction between the concept of fee simple and easements that has emerged over the decades in Texas railroad law. *Neale* established that in the presence of mixed deed language, it is the intent as conveyed by the granting clause that controls. And while *Neale*'s clause-driven analysis is in tension with the current four-corners approach espoused by *Luckel*, we, as other courts, will apply the precepts handed down by *Neale*. The granting clause approach "has become a rule of property under which titles and securities of immense value have been acquired in this state, and it should not now be disturbed or changed." *Neale*, 252 S.W.2d at 455. We will not inject further ambiguity into this already confused area of law. Instead, we summarize our analysis under *Neale* as follows.

*Neale* directs us to look at the granting clause to determine what was conveyed. But the granting clause in this deed is ambiguous, which requires us to glean intent from the remainder of the deed. In interpreting the deed under a four corners approach, we will find the deed ambiguous if more than one reasonable interpretation emerges, but if only one reasonable interpretation persists, we will render judgment. Here, when we read just the focus from the granting clause to the deed as a whole, we find that the language evinces a clear intent to convey only an easement. As we explained previously, this is the only reasonable reading of the deed when taking the majority of its provisions together. And while we must endeavor to give every word meaning if we can, we can also disregard portions of a deed that contradict the overall intent of the deed. It would be irrational to allow two words in the habendum clause to control the disposition in

this case. So, to the extent the words "fee simple" conflict with clear intent expressed by the rest of the deed, they must be disregarded. This deed conveys only a railroad right of way easement.

## CONCLUSION

The trial court correctly found that this deed did not entitle BNSF to claim the fruits of the mineral estate. The only right BNSF possesses by virtue of the 1903 Deed is a surface easement.

Issue One is overruled. The judgment of the trial court is affirmed.