

# COURT OF APPEALS
## EIGHTH DISTRICT OF TEXAS
## EL PASO, TEXAS

---

### No. 08-24-00347-CV

---

SRO Land & Minerals, LP; Monroe Properties, Inc.; MES Land & Minerals, LP; Barry Coates Roberts and George L. Stieren, as Trustees of Coates Energy Trust; Jenny Roberts Schimpff Trust; Catherine G. Roberts Trust; Barry Coates Roberts Trust; Lisa Stieren Hardeman Trust; George L. Stieren Trust; Wendy Stieren Wirth Trust; Kelly Stieren Daniell Trust and Amy E. Stieren Trust; collectively "Coates Energy"; The Allar Company, a Texas Corporation; and Mary Rose Sievers Alonzi and Lucy Annette Sievers, as Trustees of Lucy H. Sievers Trust, **Appellants**

v.

BNSF Railway Company, **Appellee**

---

On Appeal from the 143rd District Court
Reeves County, Texas
Trial Court No. 21-04-23946-CVR

---

## MEMORANDUM OPINION

The underlying dispute involves the interpretation of a 1901 deed (the 1901 Deed) from Thomas R. White, Jr. (the Grantor) to The Pecos River Rail Road Company conveying land for the purpose of maintaining and operating a railroad line. Pecos River Rail Road has long since

been abandoned, and its successor-in-interest is Appellee BNSF Railway Company. Appellants own mineral interests in tracts of land traversed by the abandoned railway and those properties are subject to the 1901 Deed. Appellants sued BNSF to determine title to the properties at issue. Appellants alleged the 1901 Deed conveyed only a right of way, and not any mineral interests. BNSF asserted the 1901 Deed conveyed a fee simple interest in the land, and claimed entitlement to oil and gas royalties from the properties.

The parties filed cross-motions for traditional summary judgment on the construction and interpretation of the 1901 Deed. Following a hearing on the motions, the trial court granted BNSF's motion, denied Appellants' motion, and decreed that the 1901 Deed conveyed fee simple title of the land to Pecos River Rail Road, "insofar and only insofar as said deed conveyed property within the boundaries of the properties owned by [Appellants], thereby vesting The Pecos River Rail Road Company with fee simple title to said lands."

On appeal, Appellants argue the trial court erred in concluding that the 1901 Deed conveyed fee simple title and in overruling Appellants' claim that it conveyed only an easement. We affirm.[1]

## I. STANDARD OF REVIEW AND APPLICABLE LAW

When, as here, both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court considers both sides' summary judgment evidence and determines all issues presented. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). On cross-motions for traditional summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *See Guynes v. Galveston Cnty.*, 861

---

[1] Because the factual and procedural background are well known to the parties and the single dispositive issue on appeal is a question of law, we focus this memorandum opinion on that question, pursuant to Texas Rule of Appellate Procedure 47.1. *See* Tex. R. App. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

S.W.2d 861, 862 (Tex. 1993). An appellate court reviews a trial court's summary judgment ruling de novo. *Valence Operating*, 164 S.W.3d at 661. In this case, the cross-motions presented traditional grounds for summary judgment on a question of law based on undisputed facts. *See* Tex. R. Civ. P. 166a(a)(1). Therefore, we review the cross-motions for summary judgment filed in this case by determining the legal question presented. *See URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 763 (Tex. 2018) ("Both the presence of ambiguity and interpretation of an unambiguous contract are questions of law we review de novo using well-settled contract-construction principles."); *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991) ("The construction of an unambiguous deed is a question of law for the court.").

"The standard of review we apply in a deed construction case decided on summary judgment is tied directly to whether the deed is clear on its face." *BNSF Ry. Co. v. Chevron Midcontinent, L.P.*, 528 S.W.3d 124, 128 (Tex. App.—El Paso 2017, no pet.). We review a deed de novo, "limiting our scope of review to the 'four corners' of the document and excluding any extrinsic evidence from consideration." *Clayton Williams Energy, Inc. v. BMT O & G TX, L.P.*, 473 S.W.3d 341, 348 (Tex. App.—El Paso 2015, pet. denied). Only when the document at issue is ambiguous does it "open[] the door to parol evidence that sheds light on the parties' true intent"; in that event, we would interpret the deed "as a mixed question of fact and law." *Id.*

"A deed is not ambiguous merely because certain provisions of the deed conflict or appear to be internally inconsistent." *BNSF Ry.*, 528 S.W.3d at 128. If the deed is "reasonably susceptible to more than one meaning after the established rules of interpretation have been applied, then the instrument is ambiguous." *Clayton Williams Energy*, 473 S.W.3d at 348. If there is only one reasonable reading of the deed, then the parties' intent is a pure question of law and we must interpret the terms of the deed as written. *Id.*

3

We assume the parties "intended every clause to have some effect; therefore, the language of the deed should be interpreted so that no clause is rendered meaningless." *BNSF Ry.*, 528 S.W.3d at 128. When seeking to ascertain the parties' intention, we attempt to harmonize all parts of the deed. *Luckel*, 819 S.W.2d at 462. "Even if different parts of the deed appear contradictory or inconsistent, the court must strive to harmonize all of the parts, construing the instrument to give effect to all of its provisions." *Id.* We will "not strike down any part of the deed, unless there is an irreconcilable conflict wherein one part of the instrument destroys in effect another part thereof." *Id.* We bear in mind that these canons are useful aids, but our primary purpose in construing a deed is to give effect to the parties' intent as expressed within the four corners of the document. *Id.* "That intention, when ascertained, prevails over arbitrary rules." *Id.* "We read deeds as one cohesive document, and do not cherry-pick phrases and read them in isolation, but rather harmonize conflicting provisions to the best extent possible." *BNSF Ry.*, 528 S.W.3d at 127.

In this case, the threshold question for summary judgment purposes is whether the 1901 Deed is ambiguous on its face. If it is not, then we interpret the deed as written and not as the parties would wish. *Clayton Williams Energy*, 473 S.W.3d at 348.

## II. DISCUSSION

### A. The 1901 Deed

The 1901 Deed begins with a recital of the consideration received by the Grantor from The Pecos River Rail Road Company:

> Know all men By These Presents: That Thomas R. White, Jr., of the County of Union in the State of New Jersey, acting by his Agent and Attorney in fact, Ira H. Evans, in consideration of Five hundred eighteen 10/100 ($518.10) Dollars, to him paid by The Pecos River Rail Road Company, a corporation duly organized and existing under and by virtue of the laws of the State of Texas, the receipt of which is hereby acknowledged . . . .

4

This recital of consideration is followed by the granting clause, which identifies what the Grantor conveyed and states the purpose of the conveyance:

> [Grantor] has granted, bargained and sold, and by these presents does grant, bargain, sell and convey unto the said The Pecos River Rail Road Company all and singular the right, title, and interest of the said Thomas R. White, Jr., in and to those certain pieces or parcels of land, for the purpose of maintaining and operating the line of railroad owned by the second party thereupon, a way and right of way one hundred (100) feet in width being fifty (50) feet on each side of its main track over, upon and through the following named surveys situated in Reeves County, Texas, as surveyed for the Houston & Great Northern R. R. Co., viz: [survey numbers omitted] which said right of way does and shall embrace a strip of ground fifty (50) feet in width on each side of the center line of said second party's constructed railroad thereon, which said center line is located upon and traverses the surveys above named as follows, to wit: [centerline description].
>
> It is the object and intention of this instrument to convey to the Pecos River Rail Road Company, a strip of land fifty (50) feet in width on each side of the centre line of the main track of its railroad, as now constructed over and across the surveys hereinbefore described and no more, irrespective of any errors or mistakes as to calls or description which may be found in this instrument.

The final two clauses of the deed are the habendum clause and the warranty clause:

> And the said Thomas R. White, Jr., hereby binds himself, his heirs and assigns, to warrant and forever defend, all and singular, the said premises unto the said The Pecos River Rail Road Company successors and assigns, against the claims of all persons lawfully claiming or to claim the same, or any part thereof, by, through, or under him.
>
> To have and to hold the premises above mentioned and described unto the said The Pecos River Rail Road Company, its successors and assigns, forever.

### B. The parties' arguments

Although the parties all assert the 1901 Deed is unambiguous, they interpret it in different ways. On one hand, Appellants maintain that the deed conveyed only an easement. In support, they point to language within the deed's granting clause, which refers to "a way and right of way" "over, upon and through" the tracts at issue and again refers to "said right of way." On the other hand, BNSF maintains that the deed conveyed a fee simple. In support, it asserts that a plain reading of the language "all and singular the right, title and interest" in the deed's granting clause

5

indicates the Grantor intended to convey all of his interest in and to those certain "pieces or parcels of land."

Appellants counter that BNSF's argument omits essential language from the granting clause: what is the piece or parcel of land being conveyed? Appellants contend the answer to that question lies in the remaining portion of the granting clause: "a way and right of way one hundred (100) feet in width, being fifty (50) feet on each side of its main tract over, upon and through the following named surveys situated in Reeves County, Texas[.]" According to Appellants, the estate being conveyed is only a "way and right of way of one hundred feet."

We agree with the parties that the 1901 Deed is not ambiguous. We therefore interpret the deed language as a matter of law. *Luckel*, 819 S.W.2d at 461.

## C. Analysis

Our primary duty when construing the 1901 Deed is to ascertain the intent of the parties from the language in the four corners of the deed, and we seek to harmonize all parts of the deed. *Id.* We begin our analysis with the deed's granting clause. *BNSF Ry.*, 528 S.W.3d at 135 ("*Neale* directs us to look at the granting clause to determine what was conveyed.").

"The purpose of the granting clause is to define and designate the estate conveyed." *Richardson v. Mills*, 514 S.W.3d 406, 414 (Tex. App.—Tyler 2017, pet. denied). The 1901 Deed's granting clause states that the Grantor "has granted, bargained and sold, and by these presents does grant, bargain, sell and convey unto . . . The Pecos River Rail Road Company all and singular the right, title, and interest of . . . Thomas R. White, Jr., in and to those certain pieces or parcels of land."[2] This clause is followed by a statement of the purpose of the conveyance: "for the purpose

---

[2] The opening recital of the 1901 Deed comports with the granting claims: "[Grantor] . . . in consideration of Five hundred eighteen 10/100 ($518.10) Dollars, to him paid by The Pecos River Rail Road Company, . . . the receipt of which is hereby acknowledged, has granted, bargained and sold" to Pecos River Rail "all and singular the right, title, and interest of the [grantor] in and to those certain pieces or parcels of land . . . ."

of maintaining and operating the line of railroad owned by the second party thereupon, a way and right of way one hundred (100) feet in width being fifty (50) feet on each side of its main track over, upon and through the following named surveys situated in Reeves County, Texas, . . . viz: [survey numbers omitted] which said right of way does and shall embrace a strip of ground fifty (50) feet in width on each side of the center line of said second party's constructed railroad thereon."

### (1) "Right of way"

The focus of the parties' dispute over the interpretation of the granting clause is primarily on the use of the phrase "right of way." Appellants contend the 1901 Deed conveys an easement based on the two sentences that appear immediately after the description of the land: "for the purpose of maintaining and operating the line of railroad owned by the second party thereupon, *a way and right of way* one hundred (100) feet in width being fifty (50) feet on each side of its main track over, upon and through" the surveys (emphasis added). Appellants argue that the deed conveyed only a railway easement because the granting clause states that it is conveying a "way and right of way" "for the purpose of maintaining and operating the line of railroad." However, Appellants acknowledge, and we agree, that the placement of the phrase "right of way" in the language of a deed is significant.

In Texas, railroad companies may, by deed, acquire land for the operation and maintenance of their railroads in fee simple or as an easement. "An estate in land that is conveyed or devised is a fee simple unless the estate is limited by express words or unless a lesser estate is conveyed or devised by construction or operation of law." Tex. Prop. Code § 5.001(a). In determining whether a deed conveys a fee simple or an easement, Texas courts examine the use and placement of the phrase "right of way." For example, in *Calcasieu Lumber Co. v. Harris*, the Texas Supreme Court

7

recognized that "the words 'right of way' have become descriptive of the land over which a railway runs, to the extent to which the easement extends," but observed that, more generally, "[t]he words 'right of way,' if not defined, are expressive of the very nature of the right ordinarily held by railway companies in the lands over which their roads run; a right to use the land only for railway purposes; an easement." 13 S.W. 453, 455 (Tex. 1890). Subsequently, in *Right of Way Oil Co. v. Gladys City Oil, Gas & Manufacturing Co.*, the high court remarked, "[a]ll authorities agree that the grant of a 'right of way' confers only an easement in the land," but that "land to be used as a right of way may be conveyed in fee; therefore the character of the title conveyed must be determined by the words used and the attending facts and circumstances." 157 S.W. 737, 739 (Tex. 1913).

Texas courts applied the holdings of *Calcasieu Lumber* and *Right of Way Oil Co.* over the ensuing decades, until the Texas Supreme Court clarified that the term "right of way" has a two-fold meaning. *Texas Elec. Ry. Co. v. Neale*, 252 S.W.2d 451, 454 (Tex. 1952). The *Neale* Court explained that the term may be used to describe a right belonging to a party of passage over any tract and may also be used to describe the strip of land upon which railroad companies construct their road-bed. *Id.*; *see also Gladys City Oil, Gas & Mfg. Co. v. Right of Way Oil Co.*, 137 S.W. 171, 178 (Tex. App.—Beaumont 1911), *aff'd*, 157 S.W. 737 (Tex. 1913) ("It sometimes is used to mean the mere intangible right to cross; a right of crossing; a right of way."). *Neale* directed courts to look at a deed's granting clause, stating two rules: first, "a deed which by the terms of the granting clause grants, sells and conveys to the grantee a 'right of way' in or over a tract of land conveys only an easement"; and second, "a deed which in the granting clause grants, sells and conveys a tract or strip of land conveys the title in fee, even though in a subsequent clause or

8

paragraph of the deed the land conveyed is referred to as a right of way." *Neale*, 252 S.W.2d at 453.

In *Neale*, the phrase "right of way" was not in the granting clause.[3] 252 S.W.2d at 453. Instead, the fourth and sixth paragraphs of the deed stated:

> (4) It is further understood herein that the above strip of land is conveyed upon the further condition and consideration that said Southern Traction Company will, as soon as it begins operation, establish a stop on the *right of way* hereinabove conveyed about the center thereof for the purpose of letting passengers on and off its cars . . ., and said company further agrees to allow to be opened and dedicated as streets across said *right of way* such streets as may be opened by grantors herein, it being understood that the property through which this *right of way* is given is to be opened up as an addition to the city of Waco, [and]

> .  .  .

> (6) However, this deed is made as a *right-of-way* deed for an Interurban Railway from Dallas to Waco, Texas, and in case said railway shall not be constructed over said land then this conveyance shall be of no effect.

*Neale*, 252 S.W.2d at 453 (emphasis added).

The Court determined that because "the words as there used [in paragraphs 4 and 6] clearly have reference to the land and not to an intangible right, they are not contradictory of the granting clause." *Id.* at 456. The Court concluded that the granting clause in the deed did "not purport to convey merely a right of way or merely an easement" even though words later in the deed appeared to "show the purpose for which the grant is made, . . . those words do not undertake to reduce or debase what has been granted from a fee title to a mere easement." *Id.* at 454.

In *Stanbery v. Wallace*, the grantor did "grant, sell and convey unto the County Judge of Coleman County, Texas, . . . all that certain real estate situated in the town of Coleman[,] . . . viz:

---

[3] The granting clause stated: "Know All Men By These Presents: That We Geo. S. McGhee, Mrs. Dora Behrens and Abe Gross, for and in consideration of One Dollar to me in hand paid and the benefits which will accrue to my other property by reason of the construction of the Interurban Railway hereinafter mentioned, do by these presents grant, sell and convey unto Chas. H. Allyn, W. D. Lacy, J. K. Parr, S. M. Dunlap, J. Baldridge, J. Houston Miller and W. R. McDaniel, Trustees of the Southern Traction Company, their successors and assigns, the following described piece or parcel of land, to-wit: [property description.]" *Neale*, 252 S.W.2d at 452.

9

[property description omitted], the two lots herein conveyed being deeded for the following purpose and trust, the said two lots are to be forever used as a street connecting the court house square on the east end of said lots with the Concho Street on the west end of said lots, and to be never used for any other purpose." 45 S.W.2d 198, 199 (Tex. [Comm'n Op.] 1932). The issue on appeal was whether the deed conveyed a mere easement for street purposes. *Id.* The court "observed that the granting clause of the deed . . . does not purport to grant over this land a right of way for street purposes, but that it conveys the land itself." *Id.* The court noted that the clause was "followed by a recital restricting the use of the land to street purposes," but held that "[s]uch restriction . . . does not operate to limit the grant to a mere easement, as it is generally held that, if the granting clause conveys a fee title to the property, subsequent recitals, which merely limit the use to which the same may be put, do not restrict the conveyance to an easement." *Id.*

On the other hand, the *BNSF Railway* Court concluded that the deed in that case granted an easement, in part, based on the placement of the phrase. In that case, the phrase "right of way" appeared in the granting clause. 528 S.W.3d at 126–27 (grantor "does GRANT, BARGAIN, SELL, RELINQUISH and CONVEY unto the said party of the second part [Panhandle], and unto its successors and assigns, for a right of way, that certain strip of land hereinafter described, as the same has been finally located over, through or across the following tracts of land"). The court held that "[t]he phrase 'for a right of way' appears in the granting clause directly in front of the phrase 'that strip of land,' and at the time the deed was written, the placement of the phrase in the granting clause before the words 'that strip of land' would have been understood as limiting the nature of any subsequently described conveyance." *Id.* at 133.[4]

---

[4] *See also Right of Way Oil*, 157 S.W. at 737–38, 739 (holding granting clause conveyed an easement where "right of way" was contained within description of granting clause: "That I being the owner in fee of the following described tract of land, [description omitted][.] . . . For the consideration of one dollar to me in hand paid, and the further

Under both *Neale* and *BNSF Railway*, placement of the "right of way" language in a deed is significant. In the deed before us, neither the phrase "right of way" nor any other language suggesting an easement or restriction on the conveyance appears in the granting clause. Instead, the phrase appears in the statement of purpose, after the granting clause's description of the property conveyed: "for the purpose of maintaining and operating the line of railroad owned by the second party thereupon, *a way and right of way* one hundred (100) feet in width being fifty (50) feet on each side of its main track over [and] . . . *which said right of way* does and shall embrace a strip of ground fifty (50) feet in width on each side of the center line of said second party's constructed railroad" (emphasis added).

We conclude that the placement of the phrase "way and right of way" after the words "in and to those certain pieces or parcels of land" in the 1901 Deed indicates the phrase was not intended to limit the nature of the previously described fee simple conveyance but rather to describe the intended use of the land. *See Neale*, 252 S.W.2d at 453 ("a deed which in the granting clause grants, sells and conveys a tract or strip of land conveys the title in fee, even though in a subsequent clause or paragraph of the deed the land conveyed is referred to as a right of way"); *Hidalgo Cnty. v. Pate*, 443 S.W.2d 80, 85–86 (Tex. App.—Corpus Christi 1969, writ ref'd n.r.e.) ("In the first portion of this instrument set forth above, the granting clause has no language restricting the conveyance to that of an easement. 'Right-of-way' is used only in the description

---

consideration of the benefits and advantages that will accrue to me by the construction of a railway over said tract of land, have and do hereby grant, sell and convey unto the East Texas Railway Company, for the purpose of constructing, operating and maintaining its railroad, the right of way, two hundred feet in width, over and upon the above-described tract of land; together with the right to take and use all the timber, earth, stone and mineral existing or that may be found within the right of way hereby granted"); *Gulf Coast Water Co. v. Hamman Expl. Co.*, 160 S.W.2d 92, 93, 96 (Tex. App.—Galveston 1942, writ ref'd) (holding granting clause conveyed an easement where "right of way" was contained within description of granting clause: "do grant, sell, and convey unto the Gravity Irrigation & Power Company, the following described property, and premises situate in the County of Matagorda, State of Texas, to-wit: . . . 11.25 acres, right-of-way of the eastern lateral across Section X-3, I. & G.N. Survey, and being a strip 100 ft. wide and lying 50 ft. on each side of the center line of the said lateral").

portion [of] the instrument. Its use does not denominate an attempt of the parties to describe an incorporeal right of passage over the land of another.").

"While [the deed at issue] does not explicitly state that it conveys a fee title, it also lacks 'express words' clearly indicating an intent to convey a lesser estate." *Union Pac. R.R. Co. v. Ameriton Props. Inc.*, 448 S.W.3d 671, 684 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); *see also* Tex. Prop. Code § 5.001(a). "Instead, it purports to convey '[pieces or parcels] of land.'" *Ameriton Props.*, 448 S.W.3d at 684. The 1901 Deed "describes the grant in terms of the land itself, not in terms of [the railway's] rights over the land." *Id.* We conclude the granting clause in the 1901 Deed reflects a fee simple conveyance of all the Grantor's "right, title, and interest" in the land described in the deed.

### (2) "Premises"

The last two clauses in the 1901 Deed (the warranty clause and the habendum clause) refer to the "premises": "[the Grantor] hereby binds himself, his heirs and assigns, to warrant and forever defend, all and singular, the said premises," and "To have and to hold the premises above mentioned and described unto the said The Pecos River Rail Road Company, its successors and assigns, forever." Appellants assert the reference to "the premises above mentioned and described," indicates that the term "premises" should comport with the deed's preceding description of the conveyance as an easement.

In *BNSF Railway*, the habendum clause allowed "the grantee 'TO HAVE AND TO HOLD the said *premises*, together with all appurtenances.'" 528 S.W.3d at 134 (emphasis in original). The court held that "[t]he word 'premises' can be used to suggest that a conveyance transfers only an easement." *Id.* However, the words "property and premises" are "[general terms] and may be

applied equally well to a conveyance of the fee or an easement." *Gulf Coast Water Co. v. Hamman Expl. Co.*, 160 S.W.2d 92, 95 (Tex. App.—Galveston 1942, writ ref'd).

In *Brightwell v. Int'l-Great Northern R.R. Co.*, the Court determined that the deed conveyed a fee simple, not an easement; there, the deed used the term "premises" in a later clause referring to what was being granted: "[t]o have and to hold, all and singular, the said premises unto the said International Railroad Company, or its assigns, forever." 49 S.W.2d 437, 438, 440 (Tex. 1932); *see also Duhig v. Peavy-Moore Lumber Co.*, 144 S.W.2d 878, 879 (Tex. 1940) ("Likewise the clause of general warranty has reference to 'the said premises,' meaning the land described in the granting clause, and, but for the last paragraph of the deed retaining an undivided interest in the minerals, would warrant the title to the land including the surface estate and all of the minerals.").

We likewise conclude that the use of the word "premises" in the final two clauses of the 1901 Deed is not determinative of whether an easement or a fee simple was conveyed, and, in this case, is consistent with the conveyance of a fee simple as articulated in the granting clause.

### (3) "Purpose"

Appellants assert that under the holdings of *Neale* and *BNSF Railway*, the 1901 Deed conveyed only a railway easement because the granting clause states it is conveying a "way and right of way" "for the purpose of maintaining and operating the line of railroad." The deed states that the purpose of the conveyance is for the maintenance and operation of "the line of railroad owned by the second party thereupon, a way and right of way one hundred (100) feet in width being fifty (50) feet on each side of its main track over, upon and through" the surveys described in the deed. The purpose is repeated later by the statement that "[i]t is the object and intention of this instrument to convey to the Pecos River Rail Road Company, a strip of land fifty (50) feet in

width on each side of the centre line of the main track of its railroad, as now constructed over and across the surveys hereinbefore described and no more."

The *Neale* Court explained that a "declaration in a deed of the purpose for which land is conveyed or the use to be made of it does not impose a condition upon the title granted; nor does it operate to limit the grant to a mere easement." 252 S.W.2d at 456;[5] *accord id.* at 454 ("There do appear in the deed words which show the purpose for which the grant is made, but those words do not undertake to reduce or debase what has been granted from a fee title to a mere easement."). A statement of purpose does not reduce or debase what is conveyed in a granting clause if that statement of purpose appears "in a subsequent clause or paragraph of the deed." *Id.* at 454.

The *BNSF Railway* court noted that "*Neale* makes clear that a statement of purpose does not debase what is conveyed in a granting clause if that statement of purpose appears '*in a subsequent clause or paragraph* of the deed.'" 528 S.W.3d at 131 (emphasis in original). The court held, however, that "*Neale* does not say that a statement of purpose contained in a granting clause is similarly unavailing." *Id.* The court concluded "that the placement of the statement of purpose in the granting clause means something." *Id.* ("And in truth, when read in isolation, the granting clause can be fairly construed as conveying either an easement or a tract of land. The rights being conveyed in that strip of land are unclear by the terms of this granting clause.").[6]

---

[5] Referring again the fourth and sixth paragraphs of the deed, the *Neale* Court stated, "[i]n the use of the words 'right of way' in the two paragraphs the purpose for which the land is conveyed, the use intended to be made of it, is indicated. This fact, however, does not change the effect of the conveyance, for the declaration in a deed of the purpose for which land is conveyed or the use to be made of it does not impose a condition upon the title granted; nor does it operate to limit the grant to a mere easement." *Neale*, 252 S.W.2d at 456.

[6] The *BNSF Railway* court ultimately determined the deed before it was ambiguous. The court noted that "the language in the granting clause d[id] not clearly convey only a strip of land, but rather straddle[d] the line between the two different types of deeds, blending elements of both together." 528 S.W.3d at 130. Thus, *Neale* was not dispositive in *BNSF Railway* because the granting clause at issue in that case was ambiguous. *Id.* at 135. *BNSF Railway* also does not aid Appellants here because the granting clause of the 1901 Deed is unambiguous.

We conclude the statement of purpose in the 1901 Deed means nothing more than that the line of the railroad would be constructed along a strip of land 50 feet in width on each side of the main track "for right of way purposes." The statement does not define or limit the estate or title that has been granted. *See Neale*, 252 S.W.2d at 454 (noting "term 'right of way' . . . is also used to describe that strip of land which railroad companies take upon which to construct their road-bed," and concluding "the words 'establish a stop on the right of way hereinabove conveyed' mean nothing more than that a stop shall be established on the strip or parcel of land that has been conveyed by the deed for right of way purposes. They do not undertake to define or limit the estate or title that has been granted"); *Brightwell*, 49 S.W.2d at 439 (court rejected Brightwell's argument that "the words or clause, 'and granted herein as right-of-way'" evidenced the grantor's intention to convey a mere easement and not the fee, holding the words were not "used for the purpose of limiting the title granted, but to confine to the land granted a right which otherwise would have extended to other lands than the 200-foot strip).

**(4) "Over" the land**

The 1901 Deed uses the word "over" twice. Once it is used to state that the purpose of the conveyance is for maintaining and operating the line of railroad on a strip of land "on each side of its main track *over*, upon and through the following named surveys" (emphasis added). The second time it is used to state the strip of land "fifty (50) feet in width on each side of the centre line of the main track of its railroad, as now constructed *over* and across the surveys hereinbefore described and no more" (emphasis added). Appellants rely on *BNSF Railway* to argue that the word "over" showed that the grantor "did not intend to convey the entirety of the land described, but only an easement." 528 S.W.3d at 133. However, the *BNSF Railway* Court was construing the use of the word "over" as it was contained in the opening recital recognizing the value of the

15

benefits in a railroad passing over the land. *Id.* The court concluded that "[u]se of the word 'over' in the opening clause show[ed] that [the Grantor] did not intend to convey the entirety of the land described, but only an easement." *Id.* Additionally, the word "over" in the clauses describing the conveyance were paired with "through and across," referencing "a line traced by surveyors for the right of way that went 'over, through, and across' various sections of land," again "suggest[ing] that the conveyance was intended to be an easement." *Id.*

"The word 'over' may sometimes mean 'above,' and in other instances it may mean the outside of." *Brightwell*, 49 S.W.2d at 440. In *Brightwell*, the deed stated:

> [Grantor] granted, bargained, sold and released, and by these presents do grant, bargain, sell and release to the International Railroad Company, a strip of (200) Two Hundred feet in width of land *over* the tracts of land particularly described as follows, viz: a tract in Rusk County known as Six Hundred and Twenty Eight acres of E. G. Sevier Survey and One Hundred and fifty acres of the W. P. Chism League *over* and upon which the said Company has built or may hereafter build its Railroad and also the right to have the same strip of land in width, *over* and upon any other lands now owned or which may be hereafter owned by me in this State, through which said Railroad has been, or may be hereafter built

*Id.* at 438 (emphasis added). The Court concluded, "in this instance [the word 'over'] clearly means from one side or extremity of grantor's land to the other."[7] *Id.* We likewise conclude the use of the word "over" in the 1901 Deed means from one extremity of the described land to the other and does not indicate the conveyance of an easement.

### (5) Conclusion

For the reasons stated above, we conclude that the 1901 Deed conveyed a fee simple in the land described. Using a four-corners approach and reading the deed as a whole to determine the parties' intent and harmonize its language, our conclusion that the 1901 Deed conveys a fee simple

---

[7] The *Brightwell* Court noted "[t]he identical word is used in the deed construed in the *Calcasieu* Case. That deed says: 'Have granted * * * and by these presents do grant, bargain * * * to Houston and Texas Central Railroad Company, a strip of two hundred feet of land over the tracts of land,' etc. As before shown, that deed was held to convey the fee." 49 S.W.2d at 440.

title is consistent with all clauses in the deed. The warranty clause states that the Grantor "binds himself, his heirs and assigns, to warrant and forever defend, all and singular, the said premises unto the said The Pecos River Rail Road Company successors and assigns, against the claims of all persons lawfully claiming or to claim the same, or any part thereof, by, through, or under him." By warranting the "premises," and not merely a right to cross the premises, the warranty clause supports our determination that the 1901 Deed conveyed a fee simple. *See Hidalgo Cnty.*, 443 S.W.2d at 85–86 ("In fact the legal description refers to the premises herein conveyed as being a part of the premises conveyed by warranty deed of the grantors' predecessors in title. . . . The warranty clause does not limit the intent to grant a fee."); *see also Duhig*, 144 S.W.2d at 879 (general warranty referred to "'the said premises,' meaning the land described in the granting clause").

The habendum clause in the 1901 Deed states that the Grantor "binds himself, his heirs and assigns, to warrant and forever defend, all and singular, the said premises unto the said The Pecos River Rail Road Company successors and assigns, against the claims of all persons lawfully claiming or to claim the same, or any part thereof, by, through, or under him." We conclude the habendum clause also supports our determination that the 1901 Deed conveyed a fee simple. *See Neale*, 252 S.W.2d at 453 (holding "[t]o have and to hold the same unto the said Trustees, . . . their successors and assigns, forever free of all encumbrances, including telephone, telegraph and transmission lines" "evidence[s] the intention on the part of the grantor to convey the title to the tract or strip of land"); *Hidalgo Cnty.*, 443 S.W.2d at 85–86 ("The habendum clause refers to the land and premises and specifically states 'TO HAVE AND TO HOLD the above described land and premises together with all and singular the rights and appurtenances thereunto in any wise belonging * * * forever.'").

17

## III. Conclusion

BNSF established its entitlement to summary judgment as a matter of law, and the trial court did not err in granting its motion and denying Appellants' motion. We affirm the trial court's judgment.

LISA J. SOTO, Justice

June 19, 2026

Before Salas Mendoza C.J., Palafox and Soto, JJ.